**In re ROCKWOOD COMPUTER CORPORATION, Debtor.**

**Bankruptcy No. 1–83–02030.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 19, 1986.

Joseph Samet, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Sterling Nat. Bank and Trust.

Richard S. Wayne, Strauss & Troy, Cincinnati, Ohio, for Rockwood Computer Corp.

Eileen Fox, New York City, for Bankers Trust Co.

James C. Cissell, Cissell, Smith, Farish & Stanceau, Cincinnati, Ohio, Lawrence M. Powers, New York City, Trustee.

### DECISION AND ORDER ON APPLICATION FOR ATTORNEYS' FEES

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, a plan has been confirmed. The case was filed August 5, 1983. Reflective of the fact that general trade creditors were nominal in amount and number, and therefore did not have any interest in a significant involvement with the case, no creditors' committee was appointed. Early in the case, on November 22, 1983, a motion to convert the case was filed by Jeffrey N. Rich, Esq., of the firm of Winick and Rich, representing indenture trustees The Bank of New York (hereafter "Bank N.Y."), Banker's Trust Company (hereafter "Banker's"), and Sterling National Bank and Trust Company of New York (hereafter "Sterling"). (There was a fourth indenture trustee, Irving Trust Company in the picture, but the amount of the indebtedness which it represented was substantially less than was owing to the three indenture trustees earlier referred to.) The debtor opposed the motion.

In support of the debtor's opposition, an affidavit by Lawrence M. Powers, Chairman and Chief Executive Officer of Spartech Corporation, was furnished. A hearing on the motion to convert then was held February 3, 1984. Mr. Powers was present at the hearing on behalf of Spartech. He indicated at that time that Spartech was interested in reorganizing the debtor and was willing to deposit some of its stock for distribution to creditors in pursuance of that end. In place of a disposition of the motion to convert, the movants and the debtor agreed to the appointment of a Chapter 11 trustee and, thereafter by order entered February 10, 1984, we appointed James Cissell such trustee.

The court then put on its usual order setting a time for filing a plan and disclosure statement. At the request of the trustee and/or the debtor, there were continuances of those times granted by the court without objections by creditors, until June 24, 1985, when a plan and disclosure statement were filed. Hearing on the disclosure statement was continued and, in the interim, an objection to the disclosure statement was filed by Sterling on August 23, 1985. Counsel for Sterling, in that ob-

jection, was Joseph Samet of the law firm of Paul, Weiss, Rifkind, Wharton and Garrison. This was the first appearance on behalf of Sterling by this counsel. On September 10, 1985, Mr. Samet filed a notice of appearance. (Document #94.) Thereafter, on September 11, 1985, an amended plan and an amended disclosure statement were filed; and on October 3, 1985, second amended plan and disclosure statement were filed. On October 8, 1985, we entered an order approving the second amended disclosure statement. The second amended plan was confirmed by order entered December 10, 1985.

We deem the foregoing chronology useful background in evaluating what is now before the court, applications for compensation by counsel for Sterling and Banker's, pursuant to 11 U.S.C. § 503(b)(4). In addition to requesting compensation for professional services, Banker's requests also compensation for expenses of Banker's as indenture trustee pursuant to § 503(b)(3)(D).

In his application on behalf of Sterling, Mr. Samet seeks fees totaling $81,131.00 and disbursements of $5,808.22. (As pointed out by debtor, Sterling is asserting a trustee's lien against Spartech stock, so that compensation to Sterling for its attorneys' fees is available to it in that manner as well as out of the estate pursuant to an application under § 503.) In support of his application, Mr. Samet has submitted an extended memorandum largely consisting of a statement of his view of the facts concerning the contribution he made as counsel to the progress of this case. He has attached as exhibits his time records; a copy of the objection to the disclosure statement which was filed, as well as a supplemental objection; a letter dated November 19, 1985 to Mr. Powers complaining about the pace at which counsel for debtor was responding to the requests of counsel for Sterling and Banker's; and a tabulation of disbursements. Banker's has likewise, through its counsel Eileen Fox, furnished a memorandum supporting its request for services as indenture trustee in the amount of $7,180.46, and counsel fees in the

amount of $13,000.00. The application again contains the view of counsel of the significance of her participation in the case.

The trustee, James Cissell, has filed an affidavit opposing the applications of Sterling and Banker's. Mr. Powers has filed separate affidavits in opposition to the respective applications by Sterling and Banker's. A memorandum in opposition to the fee applications was filed by debtor and Spartech, and Sterling filed a reply memorandum.

There are two provisions in the Bankruptcy Code relating to compensation of professional persons. The first is 11 U.S.C. § 330, entitled "Compensation of Officers". It is the provision of the bankruptcy law under which most applications for compensation for attorneys' services in bankruptcy cases are submitted. It is pursuant to this section that applications for services as attorney to debtors, to trustees and to creditors' committees are routinely submitted. It is fundamental with respect to applications for compensation pursuant to § 330 that retention of the counsel must have been approved by the court prior to the time that services were rendered. It is axiomatic that services by a volunteer whose retention has not been approved by the court will not be allowed where application is made pursuant to § 330.

■ Because retention of applicants here was not court approved, and therefore recognizing that they may not seek compensation under § 330, applicants do so under § 503. That section authorizes the court to make awards of compensation for professional services as administrative expenses. That section, in relevant part, provides:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

\*      \*      \*      \*      \*      \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

* * * * * *

We note that § 503 contains not only the above-quoted provisions, but also makes reference (at § 503(b)(2)) to compensation and reimbursement under § 330(a) which can be awarded as an administrative expense.

Since § 330 deals comprehensively with the award of compensation to professional persons, it is perhaps unexpected to see the same subject dealt with further in the language quoted above in § 503. On its face, what seems to separate a § 503(b)(4) award for professional services from one under § 330 is the requirement contained in § 503(b)(3)(D), coupled with § 503(b)(4), that the professional services have been rendered to a creditor or indenture trustee who makes "a substantial contribution" in the case, such services being limited to those in bankruptcy cases arising under Chapters 9 or 11 of this title. Notwithstanding the existence of the § 503(b) provision, as we stated above, usually in Chapter 11 compensation is sought by professional persons pursuant to § 330. Though no statutory test of "substantial contribution" by a § 330 applicant is provided, it would seem implicit that an attorney seeking compensation pursuant to § 330 would have made a substantial contribution to justify an award by the court. This makes for an uncertainty as to what Congress had in mind in including the extra compensation provision at § 503(b) relating to Chapters 9 and 11. To a clarification of that uncertainty and an exploration of the interplay of § 330 and § 503(b)(4) we now turn.

A provision for compensation comparable to § 503(b) of the Code was not authorized in Chapter XI cases under the Bankruptcy Act, but there was a comparable provision for compensation in Chapter X cases. Such provisions in Chapter X cases were adopted to deal with what was perceived to be an undesirable situation in the more substantial reorganization cases which tended to be dealt with in Chapter X. The earlier practice had been to permit compensation only to an authorized committee. Because of this, participation of individual security holders or independent committees was discouraged since they could not be compensated from the estate. It was felt that participation by such entities should be stimulated, for it would assist the reorganization process in Chapter X cases. See, 6A Collier on Bankruptcy (14th Ed.) ¶ 13.01.

The relevant statutory enactments in the Bankruptcy Act to achieve this objective are to be found in §§ 242 and 243 of Chapter X. Section 242 contained no limiting language other than to specify that the judge allow "reasonable compensation for services rendered". In § 243, however, the notion was injected that compensation could be had "only for services which contributed to the plan confirmed or to the refusal of confirmation of a plan or which were beneficial in the administration of the estate ..." A contemporary case holds that the objective of stimulating creditor participation also lies behind § 503 of the Code. *In re General Oil Distributors, Inc.,* 51 B.R. 794 (Bankr.E.D.N.Y.1985).

As the case law developed, distinctions came to be made as to when compensation was allowable by the court under §§ 242 and 243. Thus, no allowance would be made where the service for which compensation was sought was rendered "primarily in the sole interests of the particular individual or group represented." 6A Collier on Bankruptcy (14th Ed.), ¶ 13.06(b), at p. 585. Nor was a claimant "entitled to an allowance for activity where the activity amounts to the performance of some function or duty of the trustee, debtor-in-possession, or other officer of the estate." *Id.* at p. 586. It was said that then the claimant is a mere volunteer. The principle that no fees are to be allowed where the services were wholly in the interests of those represented, applied also to indenture trustees and their attorneys. *Id.* at p. 595.

■ While the words "substantial contribution" found in § 503 of the Bankruptcy Code are not taken directly from Chapter X, it is clear that the phrase is derived therefrom. *In re Calumet Realty Co.,* 34 B.R. 922, 925 (Bankr.E.D.Pa.1983); *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 566 (Bankr.C.D.Utah 1985). The principal test under the "substantial contribution" provision remains, "benefit to the debtor's estate, the creditors, and, to the extent relevant, the stockholders." 3 Collier on Bankruptcy (15th Ed.), p. 501–31.

■ We apply now the foregoing to this case. Both present applicants were retained by indenture trustees, Mr. Samet of the Paul, Weiss firm by Sterling, while Eileen Fox was in-house counsel for Banker's. The concept of reorganization of the debtor by being taken over by Spartech, with Spartech contributing the small amount of cash necessary to fund the trade debt and a certain amount of its stock to settle the claims of debenture holders, had already been shaped, prior to entry of Samet or Fox into the case. What was not in place prior to their entry was a formula for the distribution of Spartech stock among the four debenture issues. It was not in developing the broad shape of a reorganization plan that applicants were involved, but rather in negotiation and strategy in maximizing for the respective client of each, the amount to be allocated to that client of the Spartech stock.

It was in this connection that Mr. Samet introduced his perception of "double dipping". As a result of this, he secured a real benefit for his client and, more specifically, for the debenture holders of the issue for which Sterling was the indenture trustee. Ultimately, a formula for distribution of the Spartech stock among the four debenture issues was arrived at. Indeed, we can ourselves attest to the fact that counsel for the respective indenture trustees negotiated hard and well in this regard, for in this respect the court had direct contact with this case.

We must determine whether the resolution of the allocation of Spartech stock among debenture issues constituted "substantial contribution" to this case. We do so in the light of the authorities marshalled above. After due consideration, we have come to the conclusion that such resolution was a service provided primarily for the benefit of the respective clients. What was happening here was that the debtor and Spartech were proposing a reorganization in which a total amount of Spartech equity was contributed to satisfy the claims of all debenture holders. That concept evidently was acceptable to the indenture trustees. That, however, exhausted what had to be

done in developing a reorganization plan, acceptable in principle, by the major creditors. With that concept, the indenture trustees accepted the responsibility of adjusting among themselves how the contributed equity would be distributed. It was in regard to that adjustment that applicants worked. It cannot be said that their efforts were for some broader purpose than to serve the individual clients, because, in fact, their clients represented virtually the entire creditor burden on this estate. We conclude, therefore, that these efforts by applicants are not compensable under § 503.

Applicants assert that in addition to the foregoing work, they were involved in the events in this Chapter 11 case which transpired after the allocation of Spartech stock among indenture trustees was agreed to. What remained to be done thereafter was to frame an appropriate disclosure statement and plan. There is sharp disagreement between applicants on the one hand, and attorney for the debtor and trustee on the other, with respect to what applicants did as to these matters. Applicants, particularly Samet, contend that their input was indispensable to the completion of a suitable disclosure statement and plan, while the attorney for the debtor and trustee assert that that evaluation is greatly exaggerated and that, indeed, Samet hampered and caused delay in the process of completing these items. We decline to resolve these conflicting contentions, for in respect to this aspect of any work done by applicants, their right to compensation is determinable as a matter of law.

We spoke earlier about the need to consider the interplay between § 330 and § 503(b)(4). We do not believe that the "substantial contribution" required by § 503(b)(4) is to be found in connection with the performance of the normal tasks required of counsel representing the proponent of a Chapter 11 plan. The formulation of a disclosure statement and plan, of course, falls into this category. Where the disclosure statement and plan are presented by the debtor which is represented by an attorney appointed by the court pursuant to § 330, that attorney is entitled to compensation for that work. Another attorney who contributes to these matters is merely performing an "activity [which] amounts to the performance of some function or duty of the trustee, debtor-in-possession, or other officer of the estate," and compensation should not be awarded to such a claimant. 6A Collier on Bankruptcy (14th Ed.), ¶ 13.-06(b) at p. 586.

The applications are denied.

The foregoing constitutes our findings of fact and conclusions of law.

So Ordered.