### In re BUTTES GAS & OIL CO., Debtor.

### No. 85–07494–H3–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Oct. 2, 1989.

See, Bkrtcy., 72 B.R. 236.

Lenard M. Parkins and Thomas S. Henderson, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

Roger A. Ferree, McCutcheon, Black, Vergeler & Shea, Los Angeles, Cal., for Chemical Bank.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Hearing concluded on July 21, 1989 on the Final Application for Reimbursement of

Expenses of Chemical Bank pursuant to 11 U.S.C. §§ 503(b)(3)(D), (4) and (5), ("Application") filed by Chemical Bank and after considering the pleadings, evidence, memoranda, and arguments of counsel, the court makes the following findings of fact and conclusions of law and enters a separate Judgment in conjunction herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

The Application seeks reimbursement of a total sum of $201,021.03 incurred by Chemical Bank in retaining the services of the law firm of McCutchen, Black, Verleger and Shea ("McCutchen"), as counsel to Chemical Bank, and for the services and related expenses of Chemical Bank as Indenture Trustee through Mr. William H. Berls, Vice President of Chemical Bank. Of the total sum claimed, Chemical Bank has paid McCutchen compensation for legal services rendered in the sum of $97,482.00 and expenses incurred in the sum of $19,389.30. Additional sums have been billed but not yet paid by Chemical Bank which comprise $4,025.00 for fees and $124.73 in expenses. Part of the total figure claimed by Chemical Bank also includes "anticipated" fees in the amount of $12,500.00 and expenses in the amount of $2,500.00 which "will" be billed to conclude the representation. In addition to the amounts claimed for reimbursement due to representation by McCutchen, Chemical Bank also claims the sum of $65,000.00 for the services and related expenses incurred by Chemical Bank through the contribution of services of their Vice President, Mr. Berls.

Chemical Bank was the Trustee under a certain Indenture dated August 15, 1977 between Buttes Gas & Oil Company, the Debtor herein, and Chemical Bank whereby certain 10¼% subordinated debentures were issued, said debentures being due August 15, 1997. Debtor filed bankruptcy on November 15, 1985 and since that time Chemical Bank has been represented by McCutchen, both in its independent capacity and as an active member of the Official Unsecured Creditors' Committee ("Creditors' Committee") of the Debtor which was formed pursuant to an Order of this court dated January 7, 1986.

11 U.S.C. § 503 is the applicable Bankruptcy Code provision which governs the allowance of administrative expenses. Under 503(b)(3)(D) actual, necessary expenses, other than compensation of a professional person, incurred by a creditor, indenture trustee, equity security holder, or a committee of creditors or equity security holders, that makes a substantial contribution to a Chapter 11 reorganization are allowable as administrative expenses. Compensation for services rendered by a professional to parties entitled to recover under this provision is provided for by § 503(b)(4) (services by attorney or accountant) and § 503(b)(5), (services of an indenture trustee). Thus, § 503(b)(4) is applicable to the fees and expenses claimed by McCutchen as counsel for Chemical Bank, and § 503(b)(5) is applicable to the amount incurred by Chemical Bank, indenture trustee, for the services of their Vice President. In order for this court to allow these sums as an administrative expense, a substantial contribution to the Chapter 11 reorganization must have been made per the language of this Section.

The burden of proof is on the movant or applicant in establishing their entitlement to an award under 11 U.S.C. § 503(b) and they must demonstrate by a preponderance of the evidence that a substantial contribution was made. In the *Matter of Baldwin–United Corp.*, 79 B.R. 321, 336 (Bankr.S.D.Ohio 1987); *In re American 3001 Telecommunications, Inc.*, 79 B.R. 271, 273 (Bankr.N.D.Tex. 1987); *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987). The burden of persuasion remains with the applicant; however, the burden of production shifts to the objector, here the Debtor, after the applicant has presented a *prima facie* case. *In re Ralph Marcantoni & Sons*, 62 B.R. 245 (D.Md.1986). This court finds that Chemical Bank has not sustained their burden of proof as they have failed to establish their entitlement to an award by a

194

preponderance of the evidence. Since Chemical Bank failed to present a *prima facie* case, the burden of production never shifted to the Debtor.

■ There is no definition of substantial contribution in the Code; however, that phrase is derived from the 1898 Bankruptcy Act, §§ 242 and 243 (former 11 U.S.C. §§ 642, 643), and has been interpreted to require a contribution which provides tangible benefits to the bankruptcy estate and the other unsecured creditors. Thus, an incidental benefit to the estate standing alone is not a sufficient basis for administrative status under § 503(b)(3)(D). *In re Patch Graphics*, 58 B.R. 743 (Bankr.W.D. Wis.1986). The principal test under the substantial contribution provision is benefit to the Debtor's estate, the creditors, and, to the extent relevant, the stockholders. *In re Rockwood Computer Corp.*, 61 B.R. 961 (Bankr.S.D.Ohio 1986).

■ Among the factors most often considered in determining whether a substantial contribution has been made by a party, are the following: (1) whether the services were rendered solely to benefit the client or to benefit all the parties to the case; (2) whether the services provided a direct, significant, and demonstrable benefit to the estate; and (3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys. *In re General Oil Distributors, Inc.*, 51 B.R. 794 (Bankr.E.D.N.Y.1985); *In re Ace Finance Co.*, 69 B.R. 827 (Bankr.N.D.Ohio 1987); *Rockwood*, 61 B.R. 961; *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir.1986); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.C.Utah 1985); *In re Calumet Realty Co.*, 34 B.R. 922 (Bankr.E.D.Pa.1983).

Chemical Bank contends that they have made a substantial contribution to the administration of this Chapter 11 proceeding and the confirmed Plan of Reorganization of the Debtor through the efforts of its Vice President, Mr. Berls, and its counsel, McCutchen, in the following manner. They claim that Mr. Berls and its counsel fully participated in negotiating and facilitating the structuring of the Creditor's Committee which involved diverse and conflicting interests, and that their activities ultimately resulted in a cohesive and unified committee's being formed to pursue common issues regarding negotiations with the Debtor. In addition, they allege that the Creditors' Committee played an integral role in the process of reorganization and since they served as a voting member of that committee, they therefore made a substantial contribution to the estate. Chemical Bank also claims to have participated in resisting and opposing the efforts by the secured banks to prohibit the Debtor's use of cash collateral to further develop its oil and gas properties and foreclose its collateral. If this had occurred, it was Chemical Bank's opinion that liquidation would have resulted.

Substantial time was also claimed by Chemical Bank to have been devoted to opposing the Debtor's proposal that a particular creditor be treated as generally unsecured versus subordinated, resulting in more money for distribution to the creditors. They also contend that informing approximately 3,000 debenture holders, for whom they were trustee, of the activities and progress of the bankruptcy, in addition to limiting the number of in person creditor committee meetings, constituted a substantial contribution. Their active participation in analyzing third-party claims against the affiliates of the Debtor, related persons and secured banks was deemed by the movant as significant. However, the most significant contribution, according to Chemical Bank, was that it developed the confirmed plan which represented a compromise between the Debtor and the creditors, most of which was attributable to the efforts of Chemical Bank and the Creditors' Committee.

The evidence submitted by Chemical Bank consisted of three exhibits and the testimony of two witnesses, Mr. Berls, the Vice President of Chemical Bank, and Mr. Ferree, one of the attorneys in the McCutchen firm who participated in the representation of Chemical Bank. Basically, the exhibits admitted on behalf of

Chemical Bank were duplicative of the witnesses' testimony and the pleadings already on file in the case. Exhibits 1 and 1A are copies of the Fee Application and a list of the intitial Members of the Creditors' Committee, respectively. Exhibit 2 is a Declaration of William Berls in Support of the Application, which in essence is a reiteration of his live testimony given on June 12, 1989. Exhibit 3 is a Declaration of Roger A. Ferree of the McCutchen firm in Support of the Application, with Exhibit 3A being copies of the firm's statements to Chemical Bank and Exhibit 3B being a summary of information contained in the firm's time sheets.

This court finds that the evidence submitted at the hearing on this matter fails to support a finding of substantial contribution to the estate under § 503 which would result in the court's allowing the amounts claimed as an administrative expense. The time sheets submitted by the McCutchen firm show primarily the performance of typical creditor committee functions, including participation in negotiating and facilitating the structuring of the Committee. This court further finds that Chemical Bank was unable to specify ways in which its participation as a member of the Creditors' Committee would satisfy the necessary showing that its contribution to the estate was substantial rather than incidental, and not duplicative. Chemical Bank merely performed the normal tasks required of members of a Creditors' Committee. This is also true in regard to its contentions that it played an integral role in the process, development, formulation and confirmation of the Plan. Although Chemical Bank may well have resisted secured lenders, it had a strong self interest in the outcome of such litigation and thus any benefit to the estate on this account was incidental.

This court finds that Chemical Bank's opposition on the issue of the subodination of the subordinated debentures was not necessarily beneficial to the estate and the creditors thereof but instead appeared to accrue benefits only to Chemical Bank and the debenture holders whom Chemical Bank represented. It is axiomatic that legal services provided solely for the benefit of a creditor or client are not compensable from the bankruptcy estate. *In re Richton International Corp.*, 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981); *In re Hunt*, 59 B.R. 842 (Bankr.N.D.Ohio 1986); *In re Vlachos*, 61 B.R. 473 (Bankr.S.D.Ohio 1986); *In re Taylor*, 66 B.R. 390 (Bankr.W. D.Pa.1986); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823 (Bankr.D.C.Vt.1987); *In re Cleveland*, 80 B.R. 204 (Bankr.S.D.Cal. 1987); *In re Ryan*, 82 B.R. 929 (Bankr.N. D.Ill.1987). Where the work for which compensation is sought is routine or not of a quantitative value to the reorganization efforts of a debtor, such activities are not compensable. *In re Revere Copper and Brass, Inc.*, 60 B.R. 892 (Bankr.S.D.N.Y. 1986). Chemical Bank did not substantiate its assertion that its participation in the analysis of certain claims against the Debtor's affiliates, related persons, and the secured banks was of material assistance. In fact, this activity was for the most part a duty or function for the Debtor to perform.

Chemical Bank claims that its most significant contribution related to the development of a confirmed Plan. However, there is no dispute that the Plan was consensual and as such was the goal for which all parties were striving. There was no evidence that Chemical Bank functioned as more of a peace-maker than did any other creditor. Further, the Plan and the disclosure statement were submitted and presented by the Debtor, which is represented by its own counsel. Thus, whatever contributions were made by the movant in reaching the goal of a confirmed plan did not, in this court's opinion, amount to the substantial contribution required under § 503 to award the sums claimed as an administrative expense. In addition, the fact that efforts were made to limit the number of meetings in person of the Creditors' Committee hardly results in the substantial contribution envisioned for reimbursement under § 503.

In connection with Chemical Bank's contention that they should be allowed $65,000.00 as an administrative expense

due to the services performed by Mr. Berls in his capacity as agent for the indenture trustee, this court finds that there is no evidence or documentation which would support such an award. Such compensation per § 503(b)(5) is based upon the time, nature, extent and value of such services and the cost of comparable services other than in a case under the Bankruptcy Code. Chemical Bank did not submit any evidence which would outline the services rendered by Mr. Berls. Instead, they submitted Mr. Berls and Mr. Ferree's self-serving declarations (Exhibits 2 and 3) that services were performed and that the sum of $65,000.00 was reasonable. Although Mr. Berls and Mr. Ferree testified at the hearing, their testimony was essentially a reiteration of their declarations. Thus, this court finds that Chemical Bank has not sustained its burden of proof in connection with its request for allowance of these sums as an administrative expense pursuant to § 503.

In addition to claiming that it made a substantial contribution, Chemical Bank asserts that the fees and expenses of Mr. Berls and the McCutchen firm should be allowed due to the fact that Chemical Bank has made payment of these amounts and that the activities of Chemical Bank were mandated by § 315(c) of the Trust Indenture Act (15 U.S.C. § 77ooo (c)). Notwithstanding the provisions of the Trust Indenture Act, the proper test for awarding legal fees to counsel for an indenture trust is the Bankruptcy Act. *In re Multiponics, Inc.*, 622 F.2d 731, 733 (5th Cir.1980). There is no distinction between indenture trustees and other applicants for compensation under § 503, nor any conflict in the statutory language of the Bankruptcy Act and the Trust Indenture Act. The Trust Indenture Act sets forth duties and responsibilities of the indenture trustee and has no bearing on the decision by Congress via § 503 to compensate those particular indenture trustees which substantially contribute to the bankruptcy proceeding. Thus, in order to receive compensation for services rendered on behalf of debenture holders in a bankruptcy case, the substantial contribution test of § 503 must be satisfied. *In re Flight Transp. Corp. Secur. Litigation*, 78 B.R. 562 (D.Minn.1987).

Further, Chemical Bank claims that § 607 of the Indenture between Chemical Bank and the Debtor obligates the Debtor to pay for Chemical Bank's fees for services rendered in accordance with the indenture. A contractual right to reimbursement and compensation under the Indenture does not result in an automatic entitlement to compensation under § 503. *In re Revere Copper & Brass, Inc.*, 60 B.R. 892 (Bankr.S.D.N.Y.1986). As stated previously, this court finds that Chemical Bank has not satisfied the substantial contribution test of § 503 and thus, the amounts sought to be reimbursed as an administrative expense are not allowed.

Although there exists a need to interpret § 503 broadly to effectuate its purposes, which include the stimulation and encouragement of meaningful creditor participation in reorganization proceedings, this must be balanced by the requirement of keeping administrative expenses to a minimum. *In re Baldwin–United Corp.*, 79 B.R. 321 (Bankr.S.D.Ohio 1987); *Rockwood*, 61 B.R. 961; *In re Russell Transfer, Inc.*, 59 B.R. 871 (Bankr.W.D.Va.1986). The evidence on behalf of movant was sparse, self-serving and conclusory. The integrity of § 503 can only be maintained by limiting compensation to unusual creditor actions which lead to demonstrated benefits to the creditors, debtor or the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not be used as a method for reimbursement of every creditor who elects to hire an attorney. *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr.S.D.Cal.1988).

Based upon the foregoing, this court finds that the Final Application for Reimbursement of Expenses of Chemical Bank pursuant to 11 U.S.C. §§ 503(b)(3)(D), (4) and (5) filed on behalf of Chemical Bank should not be allowed and thus the application is denied. A separate Judgment will be entered by the court pursuant to the court's findings of fact and conclusions of law.