**In the Matter of JACK WINTER APPAREL, INC., Winjak, Inc.**

No. 90–C–439.

United States District Court,
E.D. Wisconsin.

Sept. 28, 1990.

Andrew N. Herbach, Howard, Solochek, Nashban & Weber, Milwaukee, Wis., for appellant.

John Brynes, Office of the U.S. Trustee, Milwaukee, Wis., for respondent.

I. William Cohen, Pepper, Hamilton & Scheetz, Detroit, Mich., for Jack Winter and Winjak, Inc.

## OPINION AND ORDER

CURRAN, District Judge.

Counsel for First Bank, N.A. and First Wisconsin National Bank of Milwaukee, two creditors of the debtors in the underlying consolidated bankruptcy actions, has asked this court to review orders of the bankruptcy court dated October 12, 1989, and May 3, 1990.[1] On October 12, 1989, the bankruptcy court denied the creditors' Application for Compensation and Reimbursement of Expenses pursuant to 11 U.S.C. § 503(b)(2). Attorneys for the banks then filed a notice of appeal; but, before the briefing was completed, they asked this court to dismiss the appeal and remand this matter to the bankruptcy court so that they could present new facts. On remand, the bankruptcy court made no new findings. It reaffirmed its prior order. The instant appeal followed.

This court has jurisdiction over this appeal pursuant to 28 U.S.C.

---

1. It is unclear to what the May 3, 1990 date refers. The bankruptcy court's order is file stamped April 23, 1990 and the order was docketed on April 25, 1990.

§§ 158(a)[2] and 1334(a).[3] This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D) & (0)[4] and the bankruptcy court considered its order denying compensation to be a final order.[5] *See* Statement of Bankruptcy Judge in Accordance with Local Bankruptcy Rule 13.01.

In December of 1988, debtors Winjak, Inc. and Jack Winter Apparel, Inc. filed separate voluntary petitions under Chapter 11 of the Bankruptcy Code. The cases were eventually consolidated. An Official Committee of Unsecured Creditors was formed by the United States Trustee on January 6, 1989. On March 1, 1989, the committee was authorized to retain counsel. Meanwhile, Howard, Solochek, Nashban & Weber, S.C. served as counsel for an informal creditors committee comprised of seven of the largest creditors of the debtors.[6] This committee was formed at a meeting called on June 16, 1988. After the filing of the petitions the following December, the law firm was retained solely by First Bank, N.A. and First Wisconsin National Bank of Milwaukee and the law firm performed services only for those two banks.

As soon as the plan of reorganization was confirmed in April of 1989, the law firm filed an Application for Allowance of Attorneys Fees to Counsel for First Bank, N.A. and First Wisconsin National Bank of Milwaukee. *See* Record at Document 176. The applicants believe they are entitled to $30,000.00[7] in attorney fees and expenses

---

**2.** Subsection 158(a) of Title 28 of the United States Code provides that:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**3.** Subsection 1334(a) of Title 28 of the United States Code provides that:

> Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

**4.** Subsection 157(b) of Title 28 of the United States Code provides that:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
> (2) Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> ....
> (D) orders in respect to obtaining credit;
> ....
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**5.** The bankruptcy court did not set forth its judgment on a separate document as required by Bankruptcy Rule 9021(a). The bankruptcy court's memoranda and orders do not meet Rule 9021(a)'s requirement. *See In re Behrens,* 900 F.2d 97, 99 (7th Cir.1990). However, parties may waive the separate document requirement. *See Id.* at 100. None of the parties to this appeal have complained about the lack of a separate document and the record objectively shows that the bankruptcy court intended to render a final decision denying administrative fees to the applicant. Therefore, this court will assume jurisdiction over this appeal.

**6.** The two banks constituted approximately two thirds of the creditors that ultimately voted for the plan. They were by far the largest unsecured creditors of the debtors. *See* Record at Document 419, pp. 12–15.

**7.** The bankruptcy court's hearing revealed that the $30,000.00 is a negotiated figure. Attorney Nashban estimated that the actual value of his law firm's services was at least $50,000.00. *See* Record at Document 419, p. 39. During the prepetition and postpetition proceedings, the law firm sent the banks monthly statements for these same services which they paid on a monthly basis. *See Id.* at p. 40. Nashban testified that he was retained by the banks at "a very nominal rate of $140 per hour." *Id.* at 40. The $30,000.00 now being sought is characterized by Nashban as "reimbursement" to the banks for the fees they have already paid. *See Id.*

The $30,000.00 to pay this fee petition has already been obtained by the debtors by means of a loan which was arranged and guaranteed by BZ Holding, the "funder" and then the purchaser of the debtor companies. Despite the bankruptcy court's denial of the application, the $30,000.00 had already been deposited with the banks at the time of the first appeal. *See* Record at Document 429, p. 3. On remand, the

pursuant to 11 U.S.C. § 503, which provides that:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case, or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant or an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

11 U.S.C. § 503.

 In order to be awarded fees and expenses from the bankruptcy estate under subsections (b)(3) and (b)(4) of this statute, an applicant must meet its burden of persuading the court by a preponderance of the evidence that it rendered services that made a substantial contribution to the Chapter 11 reorganization. *See In re Patch Graphics*, 58 B.R. 743, 746 (W.D. Wis.1986). Since an administrative expense constitutes a priority claim, any recovery must be subject to strict scrutiny by the court. *Id.* at 745. Although the burden of persuasion remains with the applicant, the burden of production shifts to the objector after the applicant has presented a prima facie case. *See In re Buttes Gas &*

bankruptcy court ordered the $30,000.00 paid into court until the conclusion of these proceed-

ings. *See Id.*, p. 23.

*Oil Company,* 112 B.R. 191, 193–94 (S.D. Tex.1989).

■ There is no definition of "substantial contribution" in the United States Code. However, that phrase has been interpreted to require a contribution which provides tangible benefits to the bankruptcy estate and to other unsecured creditors. *See id.* at 194. Incidental benefit to the estate or extensive participation in the case, standing alone, are not sufficient bases for administrative status. *See Id.; In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684, 690 (S.D.Cal.1988). Efforts undertaken by creditors solely to further their own self-interest will not be compensable. *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988); *In re Patch Graphics,* 58 B.R. 743, 745–46 (W.D. Wis.1986). Because creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole, they have the burden of proving a substantial contribution. *In re Lister,* 846 F.2d at 57. Among the factors to be considered in determining whether a substantial contribution has been made by the claimant are: whether the services were rendered solely to benefit the client or to benefit all parties to the case; whether the services provided direct, significant and demonstrable benefit to the estate; and, whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys. *See In re Buttes Gas & Oil Company,* 112 B.R. 191, 194 (S.D.Tex.1989).

■ In support of its application for fees and expenses, Howard, Solochek, Nashban & Weber, S.C. submitted an itemized fee petition[8] and a declaration of attorney Ned Nashban which describes the following services rendered to the client banks and to the estates:

Your applicant has rendered professional services to said Banks and to the within estate in the following manner:

(a) Numerous conferences, correspondence and meetings with debtors' officers, and with the parties who eventually became the "Funders" under the debtors confirmed plan of reorganization. It should be noted, that negotiations with this party were initially commenced prior to the filing of the petition herein and as a natural consequence, and because the Banks were the largest creditors of the debtors, negotiations with the Funder continued after the filing of the petition, all for the benefit of the estate.

(b) Negotiating, reviewing and analyzing plans of reorganization and agreements related thereto, including the funding agreement by which a series of loans will be made to the debtors to fund and implement the plan of reorganization.

(c) Reviewed various documentation relating both to the debtors pre-petition situation as well as post-petition situation relating to the debtors financial status, cash collateral situation and the like.

(d) Participated in numerous negotiations, conferences, fact gathering, and analysis in regard to various aspects of the debtors' activities in the Chapter 11 proceeding.

(e) Participated in negotiations, conferences and meetings with the debtors, its attorneys, analyzing the debtors activities and financial situation.

(f) Participated in the various court hearings concerning the debtors and its activities.

---

8. This fee petition does not comply with 11 U.S.C. § 330(a)(1) or with Bankruptcy Rule 2016 or with Local Bankruptcy Rule 5.04 in several respects. For example, it does not provide any description of the attorneys' background or experience; it does not provide any information on the cost of comparable services other than in a bankruptcy case; and it does not include a statement as to what payments have been made or promised to the applicant for these same services. *See In re Jensen–Farley*

*Pictures, Inc.,* 47 B.R. 557, 581 (D.Utah 1985) (listing requisites of fee petition). "[A]n application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable." *In re Evangeline Refining Company,* 890 F.2d 1312, 1326 (5th Cir.1989). The instant petition is not sufficiently detailed to permit evaluation by this court.

(g) Viewed, analyzed, and made recommendations to the Banks in regards [sic] to various proposals, applications, cash collateral orders, funding agreement, debtors' disclosure statement, and debtors plan of reorganization.

(h) Attended all court appearances as provided for by § 341 of the Bankruptcy Code and other sections of the Code.

(i) Met with former employees of the debtors, who relayed certain allegations concerning the management, and financial affairs of the debtors, concerning transfer of assets, possible improper payments, and the like. In this regard, also conveyed the information obtained, to the debtors' attorney and the U.S. Trustee, and followed through that an investigation of the debtors' activities was made by debtors' counsel to the satisfaction of creditors.

(j) Investigated and initiated other potential avenues to maximize dividends for all creditors. In this regard, the debtors were restricted from pursuing other potential buyers, or other avenues to increase the dividend to creditors, because of the contract it entered into with the Funder. The Banks and your applicant as its counsel, vigorously attempted to find other buyers for the debtor, so that all creditors could have available to them, other options than the one presented by the Funder. Your applicant met with, corresponded with, and spoke with several other potential buyers, all whom had some interest either in acquiring the debtors outright, or purchasing the assets of the debtors, all for the potential benefit of all creditors.

(k) Investigated the potential liquidation and means of liquidation of the debtors as an alternative to the plan of reorganization being proposed by the debtors, as well as investigated potential going out of business sales to be held whereby certain third parties would guarantee a minimum floor of recovery to creditors.

(l) Investigated the inter-company transactions of the debtors, concerning the receivables/payable that was on their books, including analysis of financial records, articles of incorporation, copies of cancelled checks, invoices between the company, invoices that were received from creditors, corresponded and made inquiry with various creditors concerning which of the debtors they did business with, and under what circumstances.

(m) At the onset of this Chapter 11 petition, your applicant filled a void both before the official unsecured trade creditors committee was appointed herein, and before this committee retained counsel, and in which all of the members of said committee, were located outside of the State of Wisconsin. In this regard, the Funder, who became the successful purchaser of the debtors, sought out your applicant and the Banks in its continuing effort to firm up a deal with the debtors since the consent and agreement of the Banks was necessary as they were the largest creditors.

(n) Researched, analyzed and drafted various documents and reviewed the same.

(o) Numerous meetings, conferences with the debtors and their counsel.

(p) Responded by correspondence and telephonically to numerous inquiries from creditors, and other potential buyers regarding the status of the debtors.

(q) Was involved in the debtors motion concerning the use of cash collateral, was instrumental in obtaining protective orders within said cash collateral agreement for the benefit of all creditors concerning financial monitoring of the debtors' business activities.

(r) Prepared and filed proof of claims on behalf of the Banks.

(s) Investigated the potential value of the debtors' lease hold interests by reviewing numerous leases, lease summaries, consulted with real estate brokers and specialists in evaluating leases.

Application for Allowance of Attorneys Fees to Counsel for First Bank, N.A. and First Wisconsin National Bank of Milwaukee at ¶¶ 7(a)–(s) (punctuation and grammar as in original).

The Office of the United States Trustee objected to the application on the ground that "the services rendered did not result in substantial benefit to the estate under § 503(b) of the Bankruptcy Code." Record at Document 232. After conducting a hearing on the matter, the bankruptcy court agreed that the applicant had not sustained its burden of establishing entitlement to compensation pursuant to section 503(b) of the Code. The court observed that:

> The law firm's activities were centered on protecting the interests of its clients as indicated in part by numerous entries pertaining to the drafting of cash collateral agreements by the Banks and the debtors and attendance at related hearings. The firm's involvement in those activities does not clearly demonstrate that it directly benefited the debtors' estates and nonclient creditors. Furthermore, it is not this court's responsibility to glean from the firm's somewhat cryptic fee application to identify which activities went above and beyond its professional obligation to represent its clients' interests.

Order Denying Application for Compensation of Howard, Peterman [sic], Solochek, Nashban & Weber, S.C. at 3–4.

Dissatisfied with this result, Howard, Solochek, Nashban & Weber, S.C. filed the appeal presently before this court. The appellants frame the issues on appeal as follows:

> Was the Bankruptcy Court's Order denying the application for reimbursement to First Bank (N.A.) and First Wisconsin National Bank of Milwaukee for compensation of Howard, Solochek, Nashban & Weber, S.C. clearly erroneous?

> Did the law firm of Howard, Solochek, Nashban & Weber, S.C. provide substantial contributions to the bankruptcy estate in order to entitle it to an administrative expense pursuant to Bankruptcy Code Section 503(b)?

Appeal from Orders of the Honorable Charles N. Clevert dated October 12, 1989 and May 3, 1990, Denying Application for Compensation of Howard, Solochek, Nashban & Weber, S.C. at 2.

██ This court's role is set forth in Bankruptcy Rule 8013, which provides that:

> On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The bankruptcy court's conclusions of law are reviewed de novo. *See In re CHG International, Inc.*, 897 F.2d 1479, 1481–82 (9th Cir.1990); *In re Sanabria*, 52 B.R. 75, 76 (N.D.Ill.1985).

On appeal the applicant attorneys argue that the ultimate fact found by the bankruptcy court—that no substantial benefit had been contributed to the debtors' estates—is clearly erroneous. In making this assertion, the appellants rely mainly on a reiteration of the list of services contained in the original application. The law firm admits that many of its services were intended to benefit its bank clients, but believes that "at least some of the Bank's efforts and the applicant's efforts made a substantial contribution to the bankruptcy estate." Appeal from Orders of the Honorable Charles N. Clevert dated October 12, 1989 and May 3, 1990 Denying Application for Compensation of Howard, Solochek, Nashban & Weber, S.C. at 10. The problem, however, is that the applicants themselves have failed to specifically identify and segregate those services which directly contributed to the debtors' estates or to give any concrete dollars and cents accounting of any contribution.

The testimony offered at the May 8, 1989, hearing supports the bankruptcy court's ultimate finding. Attorney Nashban, having been asked how his law firm's activities benefited the estates, testified that:

> I don't think, without our continued operation as counsel for the debtors and counsel for the banks and the efforts

that we put in, this case would have reached a conclusion as it did in three and a half months from the date of filing to date of confirmation. And we believe probably that—that the successful buyer probably wouldn't have stayed active and wouldn't have consummated the deal.

Record at Document 419, p. 20.

However, when asked whether he had made any effort to differentiate between those specific activities that resulted in substantial benefit to the estates and other activities, Nashban answered that:

> There was no separation. It can be done. But because the fee was negotiated, and it was substantially less than the total fee being approved, we did not make that breakdown.

Record at document 419, p. 31. *See also Id.*, p. 37. Moreover, when an attorney representing the debtors was asked by the court to quantify the value of the services of Howard, Solochek, Nashban & Weber, S.C., to the estate, the attorney admitted that:

> I can't with specificity, other than to say that in my experience since the date of the filing, December 19th through the present time, I believe, as a lawyer who's knowledgeable in this area, that the request of $30,000 is reasonable in light of what they did in the case and what I know to have been their time involved.

*Id.* at 57–58.

■ These statements, as well as the record as a whole, demonstrate that the bankruptcy judge did not abuse his discretion in denying administrative expenses to the applicant. The activities described by Attorney Nashban were undertaken primarily in the interest of his bank clients. Any benefit to the estates was merely incidental. There was no evidence that the other unsecured creditors received any tangible benefits. The fee petition itself shows that, besides the services performed exclusively for the banks, *see, e.g.,* Record at Document 228, entries for February 21, 1989 and March 16, 1989 (involving drafting and filing of banks' proofs of claim), many of the services involved only general participation in the pre and post petition proceedings, *see, e.g., Id.* at Document 228, entries for March 13, 1989 (appearances at hearings). Such activities are not compensable as administrative expenses. *See In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684, 689–90 (S.D.Cal.1988). Since the applicant failed to present a prima facie case that it conferred a substantial benefit on the estates, the burden of production never shifted to the objector.

■ Even if the applicant had established that it benefited the estates, the court would be unable to determine the proper amount to award. As another court observed in denying a similar claim: "The character of the applicant's claim is one for services performed which are incapable of admeasuring in terms of property or funds rescued, or made available for creditors generally." *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 572 (D.Utah 1985) (quoting *In re Rollin Motors Company,* 23 F.2d 110 (N.D.Ohio 1927)). The applicant in the instant case relies on *In re Richton International Corporation,* 15 B.R. 854 (S.D.N.Y.1981), in which the court awarded attorney fees as an administrative expense. However, in that case the court specifically praised the applicant for excluding from its application those services which served only its client's interests. *See Id.* at 856.

The United States Trustee, as the objector, has cited an apt passage from a California bankruptcy decision which explains the policy governing section 503(b) of the Bankruptcy Code:

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. Such an involvement takes the form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to signifi-

cant and tangible benefits to the creditors, debtor, or the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney. *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689–90 (S.D.Cal.1988) (citation omitted), quoted in part in United States Trustee's Brief at 5.

In keeping with this reasoning, the court concludes that Howard, Solochek, Nashban & Weber, S.C., as counsel for the creditors First Bank, N.A. and First Wisconsin National Bank of Milwaukee, has not met its burden of proving by a preponderance of the evidence that it is entitled to compensation under 11 U.S.C. § 503(b) for extraordinary services which led directly to significant and tangible benefits to the other creditors, to the debtors, or to the estates. Therefore, the October 12, 1989, and April 23, 1990 Orders of the bankruptcy court will be affirmed.

### ORDER

For the reasons explained above, the court ORDERS that the bankruptcy court's Order Denying Application for Compensation of Howard, Peterman, Solochek, Nashban & Weber, S.C. (filed October 12, 1989) IS AFFIRMED.

IT IS FURTHER ORDERED that the bankruptcy court's Order (filed April 23, 1990) IS AFFIRMED.

IT IS FURTHER ORDERED that this action IS DISMISSED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment of affirmance as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that the bankruptcy court's Order Denying Application for Compensation of Howard, Peterman, Solochek, Nashban &

Weber, S.C. (filed October 12, 1989) IS AFFIRMED.

IT IS FURTHER ORDERED AND ADJUDGED

that the bankruptcy court's Order (filed April 23, 1990) IS AFFIRMED.

IT IS FURTHER ORDERED AND ADJUDGED

that this action IS DISMISSED.

Done and Ordered.