**In the Matter of BUCKHEAD AMERICA CORPORATION, et al., f/k/a Days Inn of America, Inc., et al., Debtors.**

**Bankruptcy Nos. 91–978 through 91–986.**

United States Bankruptcy Court,
D. Delaware.

Sept. 27, 1993.

---

Sheldon I. Hirshon, Proskauer Rose Goetz & Mendelsohn, New York, NY, John D. Demmy, Morris, James, Hitchens & Williams, Wilmington, DE, for former noteholders.

Stephen B. Selbst, Kevin S. Miller, Berlack, Israels & Liberman, New York, NY, Norman L. Pernick, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, for the Official Committee of Unsecured Creditors.

Matthew Feldman, Barry Seidel, Willkie Farr & Gallagher, New York, NY, James L. Patton, Jr., Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Thomas E. Kruger, Battle Fowler, New York City, Special Counsel, for debtors.

Ellen W. Slights, Asst. U.S. Atty., Wilmington, DE, for U.S.

Thomas E. Ross, U.S. Trustee, Philadelphia, PA.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

This is the Court's decision on the Motion by Former Holders of Senior Secured Increasing Rate Notes Due November 1991 for Reimbursement of Legal Fees and Expenses of Proskauer Rose Goetz & Mendelsohn as an Administrative Expense Pursuant to section 503(b) of the Bankruptcy Code.

*Background:*

On September 27, 1991 Tollman–Hundley Lodging Corp. (Lodging) and each of the other above-captioned Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Following the filing of their respective petitions, each of the Debtors remained in possession of its property and continued to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. With the exception of Lodging, these cases, which had been jointly administered, were substantively consolidated on August 13, 1992. On December 18, 1992 Debtors' Plan of Reorganization was confirmed by this Court, and Debtors emerged from bankruptcy.

The following facts form the basis for the present motion. In 1989 Stanley S. Tollman and Monty D. Hundley, owners of the largest franchisee group of Days Inn of America, Inc. (DIA), formed Lodging to acquire DIA from Reliance Capital Group, L.P. Pursuant to a Note Purchase Agreement and Indenture, both dated November 3, 1989, the Noteholders (Movants) acquired the secured Notes [1], issued by Lodging in the aggregate principal amount of $45,000,000. Lodging used the $45,000,000 to pay a part of the purchase price for DIA. As of February 1, 1991 the Notes were in default.

In November, 1990, in anticipation of Lodging's default, the Noteholders formed an unofficial committee (Unofficial Committee) and retained Proskauer, Rose, Goetz & Mendelsohn (PRG & M) to act as their counsel in negotiating a workout of the obligations of Lodging and Tollman and Hundley (T/H) under the Notes and the Indenture. With a few exceptions, all of the Noteholders were members of the Unofficial Committee.

Subsequent to Debtors' bankruptcy filing, on October 11, 1991 the United States Trustee for the District of Delaware appointed an Official Noteholders' Committee (Official Committee) for Lodging. Six of the original seven members appointed to the Official Committee also served on the Unofficial Committee. By court order dated November 12, 1991, the Official Committee was authorized to retain PRG & M as counsel for the Official Committee, *nunc pro tunc*, as of the filing date. At the same time, PRG & M continued to represent the Noteholders in connection with the workout of the T/H obligations to the Noteholders.

The Official Committee participated in negotiations regarding the sale of the Debtors' Days Inns Franchise System to Days Inn Acquisition Corp. (DIAC). Thereafter, the Official Committee was disbanded, and PRG & M filed a final fee application for its work as counsel to the Official Committee; this application was approved by the Court on May 5, 1993.

Concurrent with the sale of the Days Inn Franchise System to DIAC, Hospitality Franchise Systems, Inc. (HFS), the parent of

1. The obligations under the Notes were secured by, *inter alia:*

 a. a pledge of all the shares of voting capital stock of DIA, which had become a wholly-owned subsidiary of Lodging following the purchase of DIA by Lodging.

 b. the assignment of management and certain other fees (Management and Administrative Fees) earned by or owed to eight management companies that are affiliated with Tollman and Hundley, the principal stockholders of Lodging,

which fees were to be deposited into a "lock box" account for the benefit of the Noteholders with the Trustee under the Indenture; and

 c. the joint and several personal obligations of Tollman and Hundley to contribute into the "lock box" account the amount by which the amounts owed under the Notes on each quarterly payment date times 1.7 exceeded the Management and Administrative Fees previously deposited in the "lock box" account.

DIAC, lent approximately $10,000,000 to BF First Corporation[2], an affiliated entity owned by T/H, to facilitate the purchase by BF First of the Notes from the Noteholders.[3] This workout, although disclosed in the pleadings relating to the sale of the Days Inn Franchise System, was not a part of that sale nor subject to the approval of the Court.

It is the motion of the Noteholders, as members of the Unofficial Committee, seeking payment for the fees and expenses of PRG & M for its work in negotiating the T/H workout, that is presently before the court.

*Contentions of the Parties:*

The Noteholders request reimbursement of approximately $146,000 in legal fees and expenses of PRG & M as an administrative expense pursuant to section 503(b) of the Bankruptcy Code. The Noteholders assert that they should be reimbursed on the basis that the T/H workout was a necessary and important component of the sale of the Days Inn Franchise Assets and directly benefitted Debtors' estates. In support of this contention, the Noteholders submit the proffered testimony of Henry L. Silverman, Chairman and Chief Executive Officer of HFS and the testimony of Sheldon I. Hirshon, Esquire, a PRG & M partner. According to Mr. Silverman and Mr. Hirshon, the T/H workout was necessary to assure the future viability of the Days Inn Franchises and thus, the Debtors.

The Debtors and the Official Committee of Unsecured Creditors (OCUC) oppose the Noteholders' motion. Both contend that the Noteholders fail to satisfy Bankruptcy Code requirements for the allowance of fees and expenses as administrative claims pursuant to section 503(b). According to the Debtors, the Noteholders have not met their burden of proving that they made a substantial contribution to the Debtors' cases. Rather, Debtors maintain that PRG & M's services for which reimbursement is sought primarily

benefitted the Unofficial Committee of Noteholders; any benefit to the estate was merely incidental. Furthermore, since PRG & M has already been awarded compensation for representing the Official Committee of Noteholders, any further compensation from the Debtors' estates would be duplicative and, therefore, not for actual and necessary services.

Debtors and the OCUC also maintain that, should the Court approve the fees and expenses of PRG & M, such fees and expenses can be recovered only from the Lodging estate. In support of this contention, they argue that the Code permits recovery for fees of creditors of an estate, and the Noteholders are only creditors of the Lodging estate.

Finally, the OCUC argues that PRG & M's representation of both the Unofficial Noteholders' Committee and the Official Noteholders' Committee constituted a conflict of interest. According to the OCUC, in its representation of the Noteholders in the T/H workout, PRG & M was interested in maximizing the benefit to the Noteholders, whereas in its representation of the Official Committee of Noteholders, PRG & M was interested in maximizing the recovery for the estate.

*Discussion:*

The relevant provisions of section 503(b) of the Bankruptcy Code provide as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

\* \* \* \* \* \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—

(ii) 475.94 shares of common stock of HFS;
(iii) a note issued by Tollman and Hundley to an entity controlled by the Noteholders, payable on demand after June 30, 1992 in the principal amount of $10,000,000; and
(iv) a note issued by Tollman and Hundley to PRG & M payable on demand after June 30, 1992 in the principal amount of $100,000.

---

2. According to Debtors' response, HFS lent approximately $10,000,000 to CF First Corporation, the successor corporation to BF First.

3. Pursuant to the Note Purchase Agreement, the Noteholders transferred their Notes to BF First and agreed to terminate their rights under the various security agreements, including the Guaranty, in exchange for:
 (i) $5 million in cash;

(D) a creditor, and indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

\* \* \* \* \* \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such an attorney or accountant;

11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4).

 Read in conjunction, the foregoing provisions provide for payment as an administrative expense of the reasonable and necessary attorney fees of a creditor whose participation in a Chapter 11 reorganization makes a substantial contribution to the case. Although the Bankruptcy Code provides no definition for "substantial contribution", courts which have addressed the issue have held that a substantial contribution is one which provides "tangible benefits to the bankruptcy estate and to other unsecured creditors." *In re Jack Winter Apparel, Inc.,* 119 B.R. 629, 633 (E.D.Wis.1990). Incidental benefit to the estate or extensive participation in the case, without more, are not sufficient bases for section 503(b) status. *Id.* (citing *In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684 (Bankr.S.D.Cal.1988)).

 Because creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole, they have the burden of proving by a preponderance of the evidence that they made the requisite substantial contribution. *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988); *In re*

*U.S. Lines, Inc.,* 103 B.R. 427 (Bankr. S.D.N.Y.1989), *aff'd* 1991 WL 67464, 1991 U.S.Dist. Lexis 5262 (S.D.N.Y.1991). In determining whether a creditor has met this burden, courts consider the following factors:

1) whether the services were rendered solely to benefit the client or to benefit all parties in the case;

2) whether the services provided direct, significant and demonstrable benefit to the estate; and,

3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys.

*In re Jack Winter Apparel, Inc.,* 119 B.R. at 633. (citing *In re Lister,* 846 F.2d at 57–58.

 Furthermore, in order to justify compensation as an administrative expense under section 503(b), something more than "self-serving statements regarding one's involvement in a case which allegedly resulted in a 'substantial contribution' must be presented to the Court...." *In re 9085 E. Mineral Office Building, Ltd.,* 119 B.R. 246, 249 (Bankr.D.Colo.1990) (citing *In re U.S. Lines, Inc.,* 103 B.R. at 430). "Corroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution'" *Id.* (emphasis added). In the instant case, the Noteholders support their assertion of substantial contribution with the testimonies of Henry L. Silverman and Sheldon I. Hirshon, Esquire. Mr. Silverman, CEO of HFS, testified by proffer at the December 20, 1991 court hearing to consider the DIAF asset sale. The Court gives little weight to his testimony, however, in light of the following: first, Mr. Silverman is one of the Noteholders whose motion is at issue,[4] and therefore, is not a disinterested party, and second, his testimony was proffered at the hearing on the asset sale, months prior to the fee

---

4. According to Sheldon I. Hirshon's affidavit, submitted with PRG & M's retention application, Henry R. Silverman "absented himself from substantially all deliberations among the Noteholders regarding any proposal by HFS with respect to the Days Inns Franchise System." Hirshon

Aff. ¶ 5. B. Additionally, although Henry L. Silverman's name is on the list of Noteholders attached to the retention application, it is noted on the list that Mr. Silverman was neither a member of the Official or Unofficial Committee.

application hearing; consequently, his testimony neither went to the present issue, nor was subject to cross-examination on the present issue. The Court similarly discounts the testimony of Sheldon I. Hirshon, Esquire, a PRG & M partner, who testified at the July 29, 1992 hearing on the instant application. As a member of the firm whose fees and expenses are the subject of the present motion, Mr. Hirshon is also not a disinterested party. The Court, therefore, relies primarily on the relevant case law, the memoranda of the parties, and its own observations of the role played by the Unofficial Committee of Noteholders to make its determination regarding whether the efforts of the Noteholders resulted in a substantial contribution to this case. *Id.* (absent, or in addition to corroborating testimony, court's first-hand observance of services may be sufficient basis for substantial contribution determination).

In considering the first *Lister* factor, this Court finds that section 503(b) compensation has been consistently denied where the creditor seeking compensation acted primarily for its own benefit, and any benefit accruing to other creditors, the debtor or the estate was merely incidental. *See, In re Lister,* 846 F.2d at 57 (denying compensation to creditor whose efforts were undertaken solely to foster own self-interest); *In re Jack Winter Apparel, Inc.,* 119 B.R. 629 (denying compensation where fee application shows services performed exclusively for clients and any benefit to estate was incidental); *In re Sound Radio, Inc.,* 145 B.R. 193 (Bankr. D.N.J.1992) (compensation denied where benefit to estate was indirect result of direct efforts to advance client's interests); *In re U.S. Lines,* 103 B.R. 427 (denying compensation because any benefit to estate from attorney's participation in settlement negotiations was incidental to benefit to counsel's clients); *D.W.G.K. Restaurants, Inc.,* 84 B.R. at 690 (section 503 not intended to become a vehicle for reimbursing every creditor who decides to hire an attorney).

The Noteholders' application for reimbursement of PRG & M's fees and expenses as the representative of the Unofficial Committee demonstrates that PRG & M was engaged (and rightly so) in protecting the rights of the Noteholders. The firm's participation in the T/H workout and in any related negotiations with the Debtors was directed towards obtaining the best possible deal for its clients; any benefit to other parties was merely incidental.

■ Turning to the second *Lister* factor, it is true, as the Noteholders assert, that a finding of substantial contribution is not limited to those instances where the estate was the intended beneficiary of the creditor's efforts. *In re U.S. Lines, Inc.,* 103 B.R. at 429. Nevertheless, compensation has been denied where the creditor's efforts had a minimal positive impact on the estate or other creditors. *See, In re Lister,* 846 F.2d 55 (although creditor's efforts may have resulted in some benefit to the estate, they failed to amount to substantial contribution); *In re Jack Winter Apparel, Inc.,* 119 B.R. 629 (no award because insufficient evidence that counsel performed extraordinary services which led directly to significant and tangible benefits for other creditors, debtors, or estate); *In re Frederick Enterprises, Inc.,* 146 B.R. 360 (Bankr.W.D.Pa.1992) (creditor's efforts to obtain earlier payout of same dollar amounts not substantial contribution to Debtors' reorganization).

In contrast, compensation has been allowed in those instances where extraordinary actions by a creditor resulted in actual and demonstrable benefit to the bankruptcy estate. *See, In re Jelinek,* 153 B.R. 279 (Bankr.N.D.1993) (significant benefit was found where creditor's attorney proposed Chapter 11 plan and acted as counsel for plan's liquidating agent; without attorney, liquidating plan would never have been proposed nor creditors paid); *In re 9085 E. Mineral Office Bldg., Ltd.,* 119 B.R. 246 (substantial contribution made by creditor whose confirmed plan and willingness to compromise its own claim provided for full payment to all creditors while debtor's proposed plan provided for only token payments).

The Court concludes, contrary to the Noteholders' assertion, that the cases which hold that a creditor's unusual efforts resulted in a direct, significant benefit to the estate, debtors, and other creditors are distinguishable from the instant case. Although the workout

was a factor in allowing the Buckhead reorganization to proceed to completion, it was only one of many debt resolutions. Furthermore, unlike the *Jelinek* case, neither PRG & M nor the Noteholders proposed the workout; and unlike the *9085 E. Mineral Office Bldg.* creditor, the Noteholders did not craft the Plan of Reorganization nor accept a lesser recovery in order to increase the recovery by other creditors. In summary, the Noteholders' efforts were not extraordinary or unusual efforts, in any way directed toward providing a tangible benefit to the estate or other creditors, but rather were normal creditor efforts directed to protecting the Noteholders' interests to the greatest possible extent. That the T/H workout may have helped to facilitate the sale of the Days Inn Franchise Assets does not raise that incidental benefit to the level of a direct, significant and demonstrable contribution.

Finally, with regard to the *third* prong of the *Lister* test, i.e., whether the services for which compensation is sought were duplicative of other parties' responsibilities, the Court finds that any services by the Unofficial Committee which may have rendered a benefit to the estate were duplicative rather than actual and necessary. The sale of assets is the responsibility of the debtor in possession. *In re D.W.G.K. Restaurants, Inc.,* 84 B.R. at 690. Thus, to the extent any benefit accrued from the Noteholders' participation in the franchise asset sale, it was duplicative of debtors' duties and non-compensable. *Id.* Any participation by the Unofficial Committee of Noteholders as creditors of the Lodging estate was duplicative of the Official Committee's role and, therefore, also non-compensable. *Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1254 (5th Cir. 1986).

*Conclusion:*

For the foregoing reasons, the Court finds that the Noteholders have not met their burden of proving by a preponderance of the evidence that they made a substantial contribution to the Debtors, the estate, or other creditors. They, therefore, are not entitled to compensation for attorney fees and expenses pursuant to section 503(b).

Based on this holding, it is unnecessary for the Court to reach the other issues raised by the parties.