## In re GENERAL HOMES CORPORATION FGMC, INC., Debtors.

### Bankruptcy Nos. 90–04810–H3–11, CASE 90–00192–H4–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 24, 1992.

See also 134 B.R. 853.

John F. Higgins, IV, Sheinfeld, Maley & Kay, Houston, Tex. for debtor.

Robert M. Noblitt, Jackson & Walker, Houston, Tex., for The Bank Group.

Claire E. White, Brokeck, Phleger & Harrison, Newport Beach, Cal., for Bankers Trust Co.

Dr. Seymour Licht, P.E., pro se.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has heard the Application of Bankers Trust Company for Allowance and Payment of Indenture Trustee's and Attorneys' Fees and Expenses, and objections to the application. After considering the pleadings, evidence, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment denying allowance of administrative expenses and attorney fees. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

### Findings Of Fact

1. The General Homes Corporation ("GHC") bankruptcy case was commenced on July 10, 1990, by the filing of an Involuntary Petition by creditors S.N. Phelps & Co., Inc., Eleanora M. Crosby, and Howard E. Leppla against GHC. Eventually, GHC decided not to contest the petition, and on August 14, 1990, this Court entered an Order for Relief. GHC has continued as debtor-in-possession during the pendency of this case.

2. The United States Trustee appointed the Official Committee of Unsecured Creditors of GHC on September 4, 1990 and reconstituted its membership on October

22, 1990. The members of the Committee are Karl R. Ziebarth, S.N. Phelps & Co., Dean Witter High Yield, Walsh, See More Light Investments, Jackson National Life Insurance Co., and the applicant, Bankers Trust Company.

3. GHC 15½ notes and GHC 12¾ notes were issued under indentures dated January 31, 1985, and April 30, 1986 between GHC and MBank Dallas, N.A., as indenture trustee. Bankers Trust Company is the successor trustee with respect to both issues of Notes. All the Committee members except Bankers Trust were holders of one or both series of the Debtor's subordinated notes prior to confirmation of the Debtor's plan.

4. Bankers Trust is seeking approval of its fees as indenture trustee and also the fees of three law firms engaged by Bankers Trust prior to and during the bankruptcy case. Bankers Trust takes the position that it has made a substantial contribution to the bankruptcy case by representing the noteholders on the Unsecured Creditors Committee and taking actions on their behalf, handling numerous calls from concerned noteholders and sending numerous notices to the entire class, filing a Proof Of Claim on behalf of all noteholders to preserve their interests, evaluating and analyzing tax issues, and providing a framework for evaluating the financial position of the Debtor.

5. The fee application is accompanied by declarations of the representatives of the law firms for which compensation is sought, including the time entries billed, as well as the declaration of a representative of Bankers Trust.

6. The time entries set forth in the declaration of Thomas J. Moskie, the representative of Bankers Trust, reveal that much of the time spent by Bankers Trust postpetition involves attending Committee meetings by phone and through a representative. Another large portion of the time is dedicated to reviewing motions and reviewing what the declaration describes as "various materials on the bankruptcy."

7. The declaration of Allan L. Gropper reveals that White & Case, one of the law firms which represented Bankers Trust, spent a great deal of time conferring on behalf of Bankers Trust with the Committee, reviewing incoming pleadings, conferring with other counsel for Bankers Trust, and drafting a proof of claim on behalf of all the noteholders.

8. The declaration of Wesley W. Steen contains time entries detailing conferences and meetings between the second law firm, Winstead Sechrest & Minick, and Committee members, and work on an objection to a cash collateral order, which was prepared for the Committee.

9. The declaration of Andrew B. Koslow, of the third law firm, Brobeck Phleger & Harrison, reflects time spent participating in Committee meetings, conversing with previous counsel for Bankers Trust, as well as with counsel for the Committee, research on tax issues, and preparation for the contested confirmation hearing on the plan.

Most, if not all, time spent by Bankers Trust and its counsel was spent in notifying noteholders concerning matters of general case administration. These services were duplicative of those provided by the Committee

10. Dr. Seymour Licht, the Committee representative of See More Light Investments, testified that Moskie and Koslow attended all the meetings of the Committee together. Licht testified that in his opinion, Moskie did not contribute anything to the functioning of the Committee. (Tr. at p. 61.)

11. Licht testified that, the night before one meeting of the Committee, Moskie and Koslow met with the Committee at a restaurant in Manhattan. At that time, Moskie presented copies of his report on tax issues to the Committee. (Tr. at p. 61.)

12. On June 19, 1991, the day before the commencement of the hearing on confirmation of the plan, the Committee filed its Complaint for Equitable Subordination, Recharacterization of Debt, Recovery of Fraudulent Conveyances and Preferences, Damages, Fraud, Negligent Misrepresenta-

tions, and Other Legal, Declaratory, and Equitable Relief (the "Complaint").

13. The complaint was filed without leave of court and alleged several causes of action which appear to be property of the estate. The court entered an Order to Show Cause why the Committee, its members, and its counsel should not be sanctioned for filing the complaint without leave of court or relief from stay. Licht testified that Bankers Trust abstained from the Committee vote to file the Complaint, and asserts that Bankers Trust did so for an improper purpose. The court takes judicial notice of its Order to Show Cause, and the ongoing hearing on its Order. The court also takes judicial notice of the pleadings of Bankers Trust in connection with the Order to Show Cause. Bankers Trust has sought to be excused, and has been excused from the hearing, because it abstained from the vote.

14. The court takes judicial notice of the fact that the Committee sought approval of counsel separate from Bankers Trust's counsel shortly after the Committee was appointed. An application to approve employment of the Committee's first law firm was filed on September 18, 1990, two weeks after the Committee was formed. (Docket Nos. 104, 126.)

15. Excerpts from the deposition of Moskie placed into evidence by the senior secured lenders of the Debtor (the "Bank Group") demonstrate that Moskie, the representative of Bankers Trust, did not negotiate with the Debtor. Moskie did not analyze the allegations of preferences or fraudulent transfers, which formed the basis of the Complaint, independent of the analysis done by the Committee. The other parties participating in the hearing on the Bankers Trust application were given the opportunity to cross-designate portions of the Moskie deposition, but failed to do so.

16. The Debtor placed into evidence a letter dated May 31, 1991, sent by Bankers Trust to the noteholders it represents. The pertinent part of the letter reads:

"... The Company formulated a plan which fails to provide distribution for you or certain other groups, including the Company's stockholders. The Committee and the Successor Trustee intend to make every reasonable effort to enhance your recoveries in this case. In this vein, the Committee has developed a draft of an alternative plan of reorganization (the "Alternative Plan") that provides, among other things, for (a) the filing of a complaint making numerous allegations against certain members of the senior bank group, present and past officers and directors of the Company, and other parties, and (b) a greater likelihood that you will receive distributions. The Committee has also communicated with other unsecured creditors apart from holders of the Notes and urged them to vote to reject the Plan. You should note, however, that there is no certainty that the Bankruptcy Court will approve the Alternate Plan."

17. The language of the letter suggests that Bankers Trust took a position on, and contemplated hindering, the efforts of the Debtor to reorganize under the Debtor's plan. In addition, the letter is an exercise in brinksmanship in that it promotes the Alternative Plan, at a time during which only the debtor had the right to file a plan. (See 11 U.S.C. § 1121, and Docket Nos. 499, 1219, & 1220.)

18. Bankers Trust and its counsel did not demonstrate a tangible benefit to the bankruptcy estate or to the noteholders.

19. Bankers Trust and its counsel have not demonstrated a substantial contribution to the bankruptcy case. Indeed, as to court proceedings in the main case through plan confirmation, they have been conspicuous by their absence. As to the adversary proceedings identified at item 12, *supra,* filed without leave of court, Bankers Trust abstained from the vote and failed to advise the Committee at a time when advice might have made a difference.

### Conclusions Of Law

1. Compensation for an indenture trustee is governed by Section 503 of the Bankruptcy Code. Section 503(b)(3)(D) provides for allowance of administrative expense

claims for the actual, necessary expenses, other than compensation of a professional person, incurred by a creditor, indenture trustee, equity security holder or a committee of creditors or equity security holders in making a substantial contribution in a Chapter 11 case.

2. Section 503(b)(4) allows as administrative expenses reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under 503(b)(3).

■ 3. Services of counsel for an indenture trustee must be reasonably necessary to be compensable. *In re Multiponics, Inc.*, 622 F.2d 731 (5th Cir.1980).

■ 4. In order to be entitled to any payment from the estate, an indenture trustee must make a *prima facie* showing that it has made a substantial contribution to the case. *In re Buttes Gas & Oil Co.*, 112 B.R. 191, 194 (Bankr.S.D.Tex.1989).

■ 5. The party's compensation is not dependent on a contractual entitlement to reimbursement, but rather on whether a substantial contribution was made. *In re Revere Copper & Brass*, 60 B.R. 892 (Bankr.S.D.N.Y.1986).

■ 6. In order to be eligible to have administrative expenses allowed on the basis of a substantial contribution made in a Chapter 11 case, the applicant must demonstrate that the contribution has provided a tangible benefit to the estate and to unsecured creditors. Among the factors to be considered in determining whether services were rendered solely to benefit the client or provided a benefit to all parties in the case, are 1) whether the services provided a significant demonstrable benefit to the estate and creditors, and 2) whether the services were duplicative of services rendered by a committee, the debtor, or the attorneys for a committee or the debtor. *Buttes*, 112 B.R., at 194.

7. Services devoted to matters of general case administration are usually performed exclusively for the benefit of the client, and thus are likely duplicative, rendering them noncompensable. *In re 9085 E. Mineral Office Building, Ltd.*, 119 B.R. 246 (Bankr.D.Colo.1990).

■ 8. Except for the provision allowing administrative expenses for certain parties in making a substantial contribution, there is no authority for allowing fees, either for a committee member or for professionals employed by a committee member based on efforts undertaken through the committee. *In re UNR Industries, Inc.*, 736 F.2d 1136 (7th Cir.1984); *See also*, Levine, *Creditors Committees*, 448 Prac. L.Inst.Com.L. & Prac.Course Handbook Series 373, 376 (1988), ("it is clear that creditors' committee members can't be paid for their time on the committee.").

■ 9. The services provided by Bankers Trust and its various counsel to the noteholders, both before and after the date of appointment of the Committee, in attending Committee meetings and in bringing in-house and outside counsel to meetings of the Committee, were not beneficial to the estate or its unsecured creditors, and arguably were not beneficial even to the noteholders themselves.

10. The services rendered by Bankers Trust and its attorneys in connection with the filing of the Complaint were at best duplicative of services rendered by counsel for the Committee (which may or may not be compensable), and at worst may have been of no benefit to, or even counterproductive for, the Committee, the creditors of the estate, and/or the Debtor.

11. Bankers Trust did not participate meaningfully in the process of developing the plan of reorganization, but rather stood in the Debtor's way, in what it presumably perceived to be the interest of the noteholders it represented. The bankruptcy estate should not have to pay for services which primarily benefit the debenture holders and only incidentally, if at all, benefit the bankruptcy estate. *In re Flight Transp. Corp. Sec. Litig.*, 874 F.2d 576, 581 (8th Cir.1989).

12. The court need not decide whether Bankers Trust has an allowable unsecured claim under Section 502 against the estate for services rendered to the noteholders prior to the order for relief in this case.

The Debtor objected to Bankers Trust's proof of claim. At the pre-trial conference on that objection, a joint motion to withdraw the claim was announced. (*See, inter alia,* Docket Nos. 2039, 2087).

13. Bankers Trust and its attorneys failed to make a *prima facie* showing that they made a substantial contribution to the reorganization sufficient to justify administrative expense compensation.

Based on the foregoing, the Application of Bankers Trust Company for Allowance and Payment of Indenture Trustee's and Attorneys' Fees and Expenses is denied.