**In re ENVIRODYNE INDUSTRIES, INC., Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corporation, Viskase Holding Corporation, Viskase Sales Corporation, Clear Shield National, Inc., Envirodyne Finance Company, Debtors.**

**Bankruptcy Nos. 93 B 310, 93 B 312 to 93 B 316, 93 B 318 and 93 B 319.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 13, 1995.

*Hays Builders, Inc.),* 144 B.R. 778, 780 (Bankr. W.D.Tenn.1992).

**15.** Paragraph sixteen of the DIP Financing Order.

Allan S. Brilliant, Holleb & Coff, Chicago, IL, for debtor.

Edwin G. Schallert, Debevoise & Plimpton, New York City, for Official Committee of Bondholders.

Steven Greenbaum, Berlack, Israels & Liberman, New York City, for Unofficial Committee of 13½% Noteholders.

## MEMORANDUM OPINION AND ORDER NO. 238 AWARDING FINAL FEES AND EXPENSES TO THE UNOFFICIAL COMMITTEE

JOHN D. SCHWARTZ, Chief Judge.

Counsel for the Unofficial Committee of 13½% Noteholders, Berlack, Israels & Liberman ("Berlack"), seek compensation of $1,094,910.50 [1] and reimbursement of expenses of $172,036.78 incurred in connection with work performed in the Envirodyne Industries, Inc. ("Debtors") bankruptcy proceeding. In addition, local counsel for Berlack, Altheimer & Gray ("Altheimer") and Dickinson, Wright, Moon, Van Dusen & Freeman ("Dickinson"), seek compensation of $15,147 and $18,234, respectively, and reim-

---

1. Subsequent to the preparation of its fee application, Berlack reduced its request for compensation by $35,528.13 to remove charges for services that were inadvertently included in its application.

bursement of expenses of $1,342.34 and $3,324.78, respectively (Berlack, Altheimer & Dickinson shall be collectively referred to as "Unofficial Committee's Counsel"). The Unofficial Committee's Counsel maintains that it "substantially contributed" to the Debtors' estate and is therefore entitled to an administrative expense priority claim pursuant to § 503(b).[2] Both the Debtors' and the Official Bondholders' Committee ("Official Committee") strongly object to awarding the Unofficial Committee's Counsel any compensation or expenses under § 503(b). They argue that the Unofficial Committee and its Counsel opposed the Debtors and the Official Committee at almost every step of the process, from filing the involuntary petition to vigorously opposing confirmation of the plan of reorganization. The Unofficial Committee's Counsel's actions impeded the estate for its own purposes as opposed to benefitting it. Therefore, the Debtors and the Official Committee maintain that the Unofficial Committee's Counsel is not entitled to its fees and expenses pursuant to § 503(b).

## BACKGROUND

On June 15, 1986, the former Envirodyne Industries, Inc. issued Notes ("13½% Notes") pursuant to an indenture dated June 15, 1986[3] and due June 15, 1996 between former Envirodyne and Continental Illinois National Bank and Trust Company of Chicago, as trustee ("13½% Indenture"). At the time, this was the only outstanding public debt issued by former Envirodyne. In the spring of 1989, in conjunction with a leveraged buyout ("LBO Transaction"), former Envirodyne was merged into Emerald Sub One, Inc. ("Emerald Sub")[4], with current Envirodyne being the surviving entity. Subsequently, on August 10, 1989, Envirodyne issued $200 million 14% Senior Subordinated Debentures due 2001 ("Old 14% Notes") and $250 million face value Senior Discount Notes ("Old Discount Notes") to finance the LBO Transaction.[5]

On January 6, 1993, certain 13½% Noteholders filed an involuntary bankruptcy petition against Envirodyne. The next day, Envirodyne's subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and Envirodyne consented to the entry of an order of relief in the involuntary case. In accordance with § 1102(a), the United States Trustee appointed the Official Committee to represent Envirodyne's public debtholders. Each of the three tranches, or levels, of public debt had two representatives on the Official Committee. After protracted negotiations, the majority of the Official Committee approved Debtors' First Amended Plan of Reorganization As Twice Modified ("Plan"). The members representing the Old 14% Noteholders and Old Discount Noteholders voted in favor of the Plan while the representatives of the 13½% Noteholders were opposed to the Plan.

The Plan treated the 13½% Notes as subordinated debt. Accordingly, the 13½% Noteholders recovered substantially less than Envirodyne's other debtholders. As a result, certain 13½% Noteholders, represented by Counsel for the Unofficial Committee, opposed the Plan. This was the only opposition to the Plan. Counsel for the Unofficial Committee contested the Plan's characterization of the 13½% Notes as subordinated debt. An exception to subordination, designated as the X-clause, contained in Section 15.02 of the 13½% Indenture, formed the basis for this conclusion. For a complete discussion of this clause and why it is not an exception to

---

**2.** Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**3.** On August 10, 1989, pursuant to an amended Indenture, the interest rate on the Notes were increased from 12.0 to 13½%. *See* First Supplemental Indenture Dated as of August 10, 1989 to Indenture Dated as of June 15, 1986.

**4.** Emerald Sub was a wholly owned subsidiary of Emerald Acquisition Corporation ("Emerald").

Emerald was formed for the purpose of acquiring Envirodyne. Subsequent to the LBO Transaction, Emerald owned 100% of the stock of Envirodyne.

**5.** For a complete description of the LBO transaction, see *In re Envirodyne Indus., Inc.*, 1993 WL 566565 at *7–13 (Bankr.N.D.Ill.1993) (Findings of Fact and Conclusions of Law) and *In re Emerald Acquisition Corporation*, 170 B.R. 632, 637–38 (Bankr.N.D.Ill.1994).

subordination, *see In re Envirodyne Indus., Inc.*, 161 B.R. 440 (Bankr.N.D.Ill.1993), *aff'd* 29 F.3d 301 (7th Cir.1994). Further, counsel for the Unofficial Committee steadfastly maintained that the LBO Transaction was a fraudulent transfer under § 548. This argument was also rejected by the court. *See In re Envirodyne Industries, Inc.*, 1993 WL 566566 (Bankr.N.D.Ill.1993) (Memorandum Opinion).

## DISCUSSION

■ In order to recover fees in a Chapter 11 case under § 503(b), a movant must establish, by a preponderance of the evidence, that it made a "substantial contribution" to the case. 11 U.S.C. § 503(b)(3)(D); *In re Best Products*, 173 B.R. 862, 865 (Bankr.S.D.N.Y. 1994); *In re Stoecker*, 128 B.R. 205, 208 (Bankr.N.D.Ill.1991). While the term "substantial contribution" is not defined by the Code, courts have agreed on the following test to determine whether an entity is entitled to an administrative expense priority: (1) whether the services were rendered solely to benefit all the parties in the case or just the client; (2) whether the services provided a direct, significant, and demonstrable benefit to the estate; and (3) whether the services were duplicative of services rendered by the attorneys for the committee, the committee itself, or the debtor and its attorneys. *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988); *In re General Homes Corp. FGMC, Inc.*, 143 B.R. 99, 103 (Bankr.S.D.Tex.1992).

■ The purpose of the substantial contribution test is to encourage participation by creditors in the reorganization process, but not encourage mushrooming administrative expenses. *Best*, 173 B.R. at 865. The contribution must provide tangible benefits to the bankruptcy estate. *In Matter of Jack Win-*

*ter Apparel*, 119 B.R. 629, 632 (E.D.Wis. 1990). Incidental benefit to the estate or extensive participation in the case, standing alone, are not sufficient bases for administrative expense status. *Id.; Best*, 173 B.R. at 865. In other words, actions taken that specifically benefit one's own clients are not compensable under § 503(b). *Best*, 173 B.R. at 865. The integrity of § 503(b), and that of the bankruptcy process itself, can be maintained only by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the estate. *Id.* Compensation under § 503(b) must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. *Id.*

### I. Berlack

■ With these principles in mind, the court turns to Berlack's request for reimbursement of fees and expenses. First, the court notes that, notwithstanding allegations to the contrary, Berlack did not represent all 13½% Noteholders. A majority of Noteholders, when classified numerically, favored the Plan.[6] Therefore, Berlack's actions were not performed on behalf of these Noteholders. Further, Reliance Insurance Co., the largest 13½% Noteholder and a member of the Official Committee, opposed the action of the Unofficial Committee's Counsel. That the Unofficial Committee's Counsel's actions might have benefitted the 13½% Noteholders is, of course, not the relevant inquiry. Instead, the court must determine whether Berlack's actions substantially contributed to the whole of Debtors' estate and not to a particular creditor group or sub-group.

Berlack, as the representative of certain 13½% Noteholders, along with Bank of America National Trust and Savings Association,

---

6. The 13½% Noteholders, members of Class 6, voted as follows:

| | Accepting Number | Rejecting Number | Accepting Dollars | Rejecting Dollars |
|---|---|---|---|---|
| All Holders: | | | | |
| | 79 | 41 | $ 36,778,000 | $ 37,853,629 |
| | 65.8% | 34.2% | 49.3% | 50.7% |
| Exclusive of Insiders: | | | | |
| | 71 | 41 | $ 23,288,000 | $ 37,853,629 |
| | 63.4% | 36.6% | 38.1% | 61.9% |

*See, In re Envirodyne*, 1993 WL 566565 at *5.

as Successor Indenture Trustee for holders of the Debtors' 13½% Subordinated Notes ("Successor Trustee"), necessitated a costly, lengthy confirmation hearing, thus substantially raising the amount of administrative expenses incurred by the Debtors' estate. In this hearing, it is not disputed that the Unofficial Committee's Counsel led the opposition to the Plan. It also cannot be argued that Berlack adequately and ably represented its particular clients in the Envirodyne bankruptcy proceeding. However, neither this representation, nor their extensive participation, are grounds for awarding Berlack fees pursuant to § 503(b). As previously stated, it is Berlack's burden to establish that its services benefitted parties other than its own client; were not duplicative of work performed by others; and provided an extraordinary benefit to the estate.

Berlack seeks reimbursement of fees and expenses for the period commencing immediately prior to the filing of the involuntary petition through the time that the Plan was confirmed. For the reasons stated below, Berlack shall be reimbursed for fees incurred in conjunction with the filing of the involuntary petition and for successfully opposing the appointment of Cleary, Gottlieb, Steen & Hamilton ("Cleary") as the Debtors' counsel. The remainder of its fees must be rejected as Berlack's services were performed solely to advance the agenda and interests of its employing clients. As the services it rendered to these clients did not benefit the Debtors' estate, the court finds and determines that these services are not compensable under § 503(b).

### A. *Allowed Fees*

 With respect to the filing of the involuntary petition, only the time spent investigating the filing and preparing and filing the petition are compensable. *Stoecker,* 128 B.R. at 212–13. In other words, time spent negotiating a prepetition settlement with the Debtor and in discussions with non-petitioning creditors are not reimbursable. While Berlack's fee application does not specifically state the amount of time it actually spent preparing and filing the involuntary petition, the court must nevertheless determine an award for services performed in this area. After reviewing Berlack's fee application, the court shall award Berlack $12,000.00 in fees for filing the involuntary petition.

 Next, Berlack successfully opposed the Debtors' attempt to retain Cleary as counsel. *See In re Envirodyne Indus., Inc.,* 150 B.R. 1008 (Bankr.N.D.Ill.1993). This action, taken at the commencement of the case, was of substantial benefit to the estate. Had Cleary's conflict of interest been discovered at a later stage of the bankruptcy proceeding, the estate may well have incurred thousands of dollars in unnecessary costs. For this, Berlack is entitled to reimbursement under § 503(b). After reviewing Berlack's fee application, the court shall allow Berlack fees in the amount of $30,000 as compensation for this work.

The Debtors' estate shall be required to reimburse Berlack in the amount of $42,000 for services it performed in the Envirodyne bankruptcy proceeding.

### B. *Disallowed Fees*

 A debtor's estate is not a cash cow. Extensive participation in a bankruptcy proceeding in and of itself does not justify reimbursement of the participant's fees. *Jack Winter,* 119 B.R. at 633; *In re Johnson,* 126 B.R. 808, 810 (Bankr.M.D.Fla.1991). The Unofficial Committee's Counsel chose to oppose the Debtors' and the Official Committee's efforts to confirm the Plan. Professionals performing services in a bankruptcy proceeding who are not retained pursuant to § 327 or § 1102 may only receive compensation from the estate under § 503(b). In order to receive compensation from a debtor's estate, a committee representing creditors, such as the Unofficial Committee, must make a substantial contribution to the estate. *See* 11 U.S.C. § 503(b)(3)(D). Certainly, Berlack, as counsel for the Unofficial Committee, was aware of this standard at the time that it undertook its obligation to represent the members of the Unofficial Committee. Presumably, it took appropriate measures to in-

sure that it would be compensated.[7] A client who chooses to retain counsel in order to oppose a debtor's plan and further its own interests must realize that it may have to bear the cost of such opposition if its actions, or that of its counsel, do not substantially contribute to the estate. Berlack, as an experienced and sophisticated bankruptcy firm, surely was aware of 'the risks involved in representing a party opposed to a debtor's plan of reorganization. In addition, it may be assumed that Berlack's equally sophisticated clients were aware of such risks.

If an unofficial committee itself does not make a substantial contribution to a debtor's estate, then it is not unfair to deny that committee, or its counsel, its fees, regardless of how reasonable or exorbitant such fees may be. The policy underlying § 503(b) is summarized as follows:

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate.... Such an involvement takes the form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate. While s 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney.

*In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684, 689–90 (Bankr.S.D.Cal.1988). While Berlack performed well on behalf of its clients, it is the court's opinion that its services, except for those discussed above, did not substantially contribute to the Debtors' estate. Accordingly, the court shall not conduct an area by area, or hour by hour, review

of the services preformed by Berlack. Instead, the court shall address Berlack's primary arguments as to why it should be compensated under § 503(b).

### 1. Litigation Subcommittee

■ According to Berlack, it performed services for a litigation subcommittee created by the Official Committee to seek to negotiate pre-confirmation settlements of LBO Transaction related claims. The subcommittee was established to be responsible for decisions relating to the prosecution of such claims in the event that settlements could not be reached. According to Berlack, the Official Committee unanimously authorized an application to this court to formally retain it as co-counsel to the subcommittee pursuant to § 1103. However, no such application was ever presented to this court and there was no order authorizing the Official Committee to employ Berlack for any purpose. The Debtors' rejected the term sheet that would have made Debevoise & Plimpton and Berlack counsel to the litigation subcommittee. Certainly, an experienced bankruptcy firm such as Berlack was aware that a court must approve a retention agreement in order for a firm to be retained pursuant to § 1103 and paid pursuant to § 330. Berlack now seeks to obtain through the back door what it can not receive by going through the front. Despite its stated belief that it had been retained for a special engagement, Berlack was well aware that the Official Committee had never submitted such an application to the court.

Berlack contends that it conducted numerous meetings and telephone calls with members of this litigation subcommittee, as well as with counsel for the Official Committee, and prepared an independent analysis of potential fraudulent conveyance claims. However, such claims were never filed. Further, the litigation subcommittee did not file any complaints or motions in the Envirodyne bankruptcy proceeding. That it is difficult for the court to conceive how the Debtors' estate was benefitted by Berlack's actions is of no consequence. Berlack shall not be

---

7. Berlack did not, and has not, disclosed to the court its compensation arrangements with its clients.

permitted to use § 503(b) to recover the ordinary fees and expenses of an official committee's counsel. Since it was not retained by the Official Committee, the court must deny Berlack's request for reimbursement of fees and expenses as it relates to services performed for the alleged litigation subcommittee.

### 2. *Salomon Optional Release*

■ Berlack also asserts that it should be reimbursed for proposing a modification to the optional release granted to the Salomon entities. *See In re Envirodyne,* 1993 WL 566565 at *17–18 (Findings of Fact and Conclusions of Law in which the Salomon Optional Release is described). While each class of unsecured debtholders benefitted from the modification to the Salomon Optional Release, it cannot be said that Berlack's actions constituted a substantial contribution to the Debtors' estate. In fact, the Unofficial Committee's Counsel opposed the Salomon Optional Release. *Id.* at *21–22. Finally, as noted in the Debtors' objection, it was the court, not the Unofficial Committee's counsel, that first suggested that the provisions of the Salomon Optional Release were overbroad. Consequently, although the Unofficial Committee's Counsel may have motivated a modification to the Salomon Optional Release, its efforts to block this release preclude this court from finding that it substantially contributed to the Debtors' estate.

### 3. *Fundamental Fairness and Uniqueness of this Case*

■ Berlack argues that, after considering the uniqueness of this case, it would be fundamentally unfair for this court not to order the Debtors' estate to pay it its fees in this case. This case is unique, according to Berlack, because one third of the Official Committee actively opposed the Plan. While the Official Committee was formed to represent the interests of Envirodyne's unsecured debtholders, by supporting the Plan, according to Berlack, the Official Committee did not represent the interests of the 13½% Noteholders. As a result, Berlack maintains that the 13½% Noteholders were effectively left without representation in the Envirodyne bankruptcy proceeding. Therefore, Berlack, with the consent of its clients, took it upon itself to represent the interests of these 13½ Noteholders.

■ The question before the court is whether a bankruptcy case becomes unique when a class of interests, represented by an official committee, is on the short end of the stick when such committee votes on a debtor's plan. Alternatively, is representation on an official committee sufficient to protect the interests of a class, despite the fact that the committee has voted in a manner that allegedly goes against the interest of that class. More succinctly, should a debtor's estate be required to pay, in addition to an official committee's fees, the fees and expenses of each class that loses at the committee level and proceeds to hire its own counsel to oppose the plan. Whether the opposing creditors call themselves an unofficial committee is not relevant. It is the opinion of this court that, absent a showing of substantial contribution to the debtor's estate, a group of creditors or an unofficial committee, regardless of its origins, united to oppose a debtor's plan, are not entitled to have their fees paid by the Debtor.

The United States Trustee determined that the Official Committee sufficiently represented the interests of Envirodyne's public debtholders. That the majority of the Official Committee voted against the position of the 13½% Noteholders did not act to deprive these Noteholders of their Due Process rights in the confirmation hearing that followed. Parties who do not succeed at the committee level have the right, as the Unofficial Committee's Counsel did, to file an objection to the debtor's plan and present that objection during the confirmation hearing. However, this does not entitle such a party to have the debtor's estate pay its fees. Protecting one's own interests is not a sufficient basis to recover fees under § 503(b). Section 503(b) makes it clear that creditors opposing the plan must make a substantial contribution to the debtor's estate in order to recover its fees from the estate.

■ Notwithstanding Berlack's, or that of the Debtors' and the Official Committee, assertions, an award of fees' is not based

solely on winning and losing motions and arguments. Conceivably, even in defeat, a party may make a substantial contribution to a debtor's estate. However, this was not the case in this proceeding. The Unofficial Committee's Counsel's interpretation of the X-clause was not reasonable and cost the Debtors' estate thousands of dollars in unnecessary litigation costs. *See In re Envirodyne Indus.*, 29 F.3d at 305 (the appellants' (Successor Trustee and Unofficial Committee) interpretation of the X-clause makes no sense when taken in context of the subordination provision); *In re Envirodyne*, 161 B.R. at 448 (the Objectors' (Successor Trustee and Unofficial Committee) interpretation of the X-clause defies explanation and logic). In addition, much of the work that Berlack performed was duplicative of that performed by other parties in the case. For example, it prepared four separate plans of reorganization during the exclusivity period. During the exclusivity period, only the debtor may propose a plan. *In re Rockwood Computer Corp.*, 61 B.R. 961, 966 (Bankr.S.D.Ohio 1986). Also, its investigation of potential fraudulent conveyance claims was duplicative of both the Debtors' and the Official Committee. Therefore, these services did not provide a substantial contribution to the Debtors' estate, though such work may have benefitted its clients.

Except for its motion to disqualify Cleary, Berlack was unsuccessful on almost each and every motion that it brought in the Envirodyne bankruptcy proceeding. In addition, the vast majority of its suggestions and requests were rebuffed by the Debtors' estate and the Official Committee. It cannot be said that Berlack contributed to the Debtors' estate in any manner, let alone in the manner required by § 503(b). With respect to Berlack's uniqueness argument, this is not the first bankruptcy case where a party has sought fees after first not being successful at the committee level and then failing to block

confirmation of the debtor's plan of reorganization. *See In re Consolidated Bancshares*, 785 F.2d 1249 (5th Cir.1986) (dissident members of an official committee who filed a shareholders derivative suit were not entitled to fees pursuant to § 503(b))[8]; *Best*, 173 B.R. at 865–67 (dissident committee members objected to a debtor's plan that the majority of the committee supported. After a combative confirmation hearing, the debtor's plan was approved and the dissident committee members' fees were denied); *In re Buckhead America Corp.*, 161 B.R. 11 (Bankr.D.Del.1993) (unofficial committee of noteholders denied compensation pursuant § 503(b) after failing to provide a substantial contribution to the estate). *In re Alert Holdings*, 157 B.R. 753 (Bankr.S.D.N.Y.1993) (same). In each of the aforementioned cases, as in this case, counsel for the party opposing the debtor's plan failed to demonstrate that it made a substantial contribution to the debtor's estate and therefore did not recover its fees pursuant to § 503(b).

Accordingly, it is not unfair for this court to deny Berlack its fees under § 503(b) for services that did not substantially contribute to the Debtors' estate. Berlack was hired by a group of 13½% Noteholders to do battle with any and all entities and persons who felt the 13½% Notes constituted subordinated debt or believed that the LBO Transaction was not a fraudulent transfer. This battle plan included opposing a plan acceptable to both the Debtors and the Official Committee and eventually approved by this Court. Berlack's actions may have had the result of a larger distribution for the 13½% Noteholders, but this is a supposition. The primary beneficiary of Berlack's efforts were, of course, the 13½% Noteholders, including those who hired them, and not the Debtors' estate. It is the responsibility of the Noteholders who hired Berlack to pay them its fees. To rule otherwise would open up a pandora's box in

**8.** In *Consolidated Bancshares*, dissident shareholders, in a position similar to that of the Unofficial Committee, maintained that their actions were the real motivation behind the successful plan. Having lost a confirmation battle that they caused, they sought to claim victory for the entire estate because their efforts "furthered" the Plan. *Consolidated Bancshares*, 785 F.2d at

1253. This argument was rejected by the court because the success of such a fee application would place the dissident shareholders in a "Heads I win, tails you lose" position. *Id.* Similarly, this court rejects the Unofficial Committee's contention that they benefitted the Debtors' estate by vigorously opposing the Debtors' Plan.

824

which contentiousness would be rewarded and every party who did not get its way at the committee level would fight the proposed plan and later come to court seeking reimbursement for its fees and expenses from a debtor's estate. The court is unwilling to open this door and therefore must reject Berlack's request for fees pursuant to § 503(b).

## C. *Expenses*

In conjunction with the fees that the court will allow Berlack, it shall also allow the expenses related to such actions. Berlack has requested $49,113.59 for expenses incurred prior to January 25, 1992. These expenses are not itemized in a manner that allows the court to determine exactly which expenses relate to the specific services performed by Berlack. It is the court's estimation that $10,000 of these expenses related to services that provided a substantial contribution to the estate. Therefore, the court shall order the Debtors' to reimburse Berlack for expenses incurred in the amount of $10,000. The remainder of the expenses that Berlack seeks in this category, as well as the remainder of expenses that Berlack seeks, shall be disallowed as they related to services performed by Berlack that did not substantially contribute to the Debtors' estate.

## II. *Altheimer*

### A. *Fees*

Altheimer seeks reimbursement of fees and expenses for services that it performed as local counsel for Berlack. Given the stringent standards for receiving fees pursuant to § 503(b), it is difficult for this court to comprehend how services provided in the following areas substantially contributed to the estate: filing motion for out of state attorneys to appear *pro hac vice;* filing the Unofficial Committee's statement in compliance with Fed.R.Bankr.P. 2019; drafting the Unofficial Committee's objections to certain Debtor's motions, all of which were denied by this court; and preparation of its fee application. These tasks solely benefitted the Unofficial Committee and were of no benefit to the estate. Therefore Altheimer's request

for compensation in these areas must be denied.

Altheimer also requests fees for the role it played in causing Cleary to be disqualified as Debtors' counsel. While it is questionable whether such services were duplicative of Berlack, as Altheimer only spent 23.3 hours in this area, the court shall allow Altheimer's request for fees at Altheimer's blended attorney rate of $259.84 per hour. Accordingly, the court shall allow $6,054.27 in fees incurred by Altheimer in the successful motion that disqualified Cleary. The remainder of Altheimer's request for fees shall be denied as such services did not benefit the Debtors' estate and therefore cannot be reimbursed pursuant to § 503(b).

### B. *Expenses*

It is impossible for the court to determine Altheimer's expenses related to the Cleary motion. It is the court's estimate that it incurred $600 in expenses in this area. Therefore, Altheimer shall be allowed $600 in expenses and the remainder of its request for reimbursement for expenses shall be denied as it relates to services performed that did not substantially contribute to the estate and therefore can not be reimbursed under § 503(b).

## III. *Dickinson*

Dickinson seeks reimbursement of fees and expenses for services that it performed as local counsel for Berlack. Dickinson assisted Berlack in performing services that, in this court's opinion, as stated above, did not substantially contribute to the Debtors' estate as required by § 503(b). As Berlack will not be reimbursed for its fees and expenses in areas in which its services did not provide a substantial contribution to the Debtors' estate, neither will its local counsel. Therefore, Dickinson's request for reimbursement of fees and expenses shall be denied.

**NOW THEREFORE IT IS ORDERED** that Berlack, Israels & Liberman, Altheimer & Gray, and Dickinson, Wright, Moon, Van Dusen & Freeman be and are hereby awarded the following fees and expenses as it relates to their First and Final application for work performed as counsel to the Unofficial Committee of 13½% Noteholders. This

Order shall also address any Objections to the fee applications made to date:

1. *Berlack*—Berlack shall be awarded $42,000 in fees and $10,000 in expenses. All other fees and expenses sought by Berlack are hereby disallowed. Any remaining objections by the Debtors' and the Official Committee are hereby overruled.

2. *Altheimer*—Altheimer shall be awarded $6,054.27 in fees and $600 in expenses. All other fees and expenses sought by Altheimer are hereby disallowed. Any remaining objections by the Debtors' and the Official Committee are hereby overruled.

3. *Dickinson*—Dickinson's request for fees and expenses is hereby denied.

**IT IS FURTHER ORDERED** that the Debtors are hereby authorized to pay the aforesaid amounts to Berlack and Altheimer, respectively.

**IT IS FURTHER ORDERED** that the Debtors shall serve a copy of this order on all parties of record not served by the court.