**In re COUNTY OF ORANGE, a political subdivision of the State of California; Orange County Investment Pools, an instrumentality of the County of Orange, Debtors.**

Bankruptcy Nos. SA 94–22272 JR, SA 94–22273 JR.

United States Bankruptcy Court, C.D. California.

March 20, 1995.

Bruce Bennett and Lee Bogdanoff, Stutman, Treister & Glatt, Los Angeles, CA, Special Reorganization Counsel, for debtors.

Patrick A. Murphy, Murphy Weir & Butler, San Francisco, CA, for Orange County Creditors' Committee.

James I. Stang, Pachulski Stang, Ziehl & Young, Los Angeles, CA, for Employee Subcommittee.

Howard Rutten, Marshack & Goe, Santa Ana, CA, for Vendor Subcommittee.

Bennett J. Murphy, Latham & Watkins, Los Angeles, CA, for Bondholder Subcommittee.

David A. Gill, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, for State Street Bank and Trust.

Virginia Anne Housum, Dorsey & Whitney, Denver, CO, for First Trust Nat. Ass'n.

Marcy J.K. Tiffany, Office of U.S. Trustee, Los Angeles, CA.

David M. Card, Bank of America, Los Angeles, CA, for Bank of America.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

On February 8, 1995, the County of Orange (the "County") filed a "Motion for Order Approving Comprehensive Fiscal Year 1994–95 Compensation Package for Professionals Retained By Official Committee of Creditors of The County of Orange" (the "Motion"). The Motion provides that professionals employed by individual members of the creditors committee may only receive compensation under the Motion if the court determines that they have made a "substantial contribution" to the case. First Trust National Association, First Trust National Association of California and State Street Bank and Trust Company (collectively, the "Indenture Trustees") have objected to the Motion, arguing that based on a change to the Code affected by the Bankruptcy Reform Act of 1994 (the "Reform Act"), the proper standard for such compensation is "reasonableness" rather than "substantial contribution." The County disagrees that the Reform Act changed the existing law governing compensation to the professionals of members of a creditors committee in Chapter 9 and 11 cases.

At a hearing on March 1, 1995, I agreed with the County's position for the reasons stated in this memorandum opinion.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

On December 6, 1994, the County and its Investment Pools (the "Pool") shocked the nation by filing Chapter 9 petitions in bankruptcy. The filings were caused by substantial losses in the Pool.[1] The financial crisis is acute and immediate. The County's pro rata loss in the Pool is estimated at $527 million. Additionally, the County has a projected budget shortfall of $172 million for the remainder of the fiscal year ending June 1995. Without some dramatic changes, a much greater deficit for fiscal year 1995–96 is projected.

On December 15, 1994, the United States trustee (the "Trustee") formed an Official Committee of Creditors (the "Committee") and a Vendors' Subcommittee of Creditors (the "Vendor Subcommittee") pursuant to Bankruptcy Code (the "Code")[2] § 1102.[3]

---

1. Under California state law, the County treasurer "shall receive and keep safely all money belonging to the County...." Cal.Gov't Code § 27000 (West 1988). Monies from various entities were invested in the Pool. The Pool has 187 investors including many school, water, sanitation and transportation districts, pension funds, etc. The total amount invested in the Pool was approximately $7.5 billion. The Pool losses are currently estimated at approximately $1.7 billion. The County leveraged the Pool portfolio to increase the income return for the Pool participants. As interest rates increased, the value of the collateral pledged to secure the Pool loans decreased. In early December, some of the lenders to the Pool made demand for additional collateral. Faced with the prospect of the liquidation of the Pool portfolio, Debtors filed their Chapter 9 petitions.

2. The Code is set forth in 11 U.S.C. §§ 101–1330 (1994).

3. Section 1102(a)(1) provides in relevant part: "[T]he United States trustee shall appoint a com-

The Trustee also appointed a bondholders subcommittee of creditors (the "Bondholder Subcommittee") and, after negotiations, a subcommittee of employee representatives (the "Employee Subcommittee").[4]

Following its formation, the Committee retained legal counsel and financial advisors. After the appointment of the Committee's professionals, the Committee and the County began discussions regarding the compensation of Committee professionals.

On February 8, 1995, the County filed the Motion, which was represented to be a compromise of opposing positions regarding the County's obligation to pay Committee professionals. It sets forth the conditions under which the County will compensate professionals of the Subcommittees and members of the Committee.

The Motion seeks this court's approval of the following actions regarding professional compensation. First, it provides that the County will make interim compensation payments to Committee and Vendor Subcommittee professionals.[5] The County intends to pay 100% of the reasonable fees and expenses incurred by Committee professionals but only 50% of such fees incurred by Vendor Subcommittee professionals.[6] Second, the County expects to appropriate $2 million for fiscal year ending June 30, 1995, to pay the aforementioned professional fees and expenses. Third, members of the Committee, the Bondholder Subcommittee, the Employee Subcommittee and the Vendor Subcommittee (to the extent of the remaining 50%) will receive compensation for their professionals at the end of the case based on a substantial contribution standard. Most objections to

---

mittee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate."

The committee/subcommittee structure was proposed by the Trustee. The Trustee explained that shortly after the County filed bankruptcy, certain constituencies began to organize themselves into separate subgroups (e.g., vendors, bondholders, school districts). The Trustee recognized that these subgroups could make a substantial contribution to the reorganization process by facilitating the flow of information and lending their expertise to the process. However, both the Trustee's policy and her personal experience weighed against forming more than one committee. Accordingly, the Trustee took the unusual approach of forming official subcommittees that could designate representatives to sit on the Committee.

4. Immediately after forming the Vendor Subcommittee, the Trustee was approached by a group of bondholders and various employee organizations (the "Coalition") who wanted to form separate subcommittees. Believing that these groups were already adequately represented, the Trustee initially declined these requests. Later, the Trustee agreed to appoint these subcommittees, provided that they would only seek compensation on a "substantial contribution" basis. The bondholders accepted this limitation, while the Coalition declined. The Coalition then filed a motion for a court order directing the Trustee to appoint an employee subcommittee. This dispute was settled prior to the hearing, after the Coalition agreed that the employee subcommittee would seek compensation subject to the substantial contribution standard.

5. The Motion contains payment procedures that are similar to those adopted by the Bankruptcy Appellate Panel (the "BAP") in *U.S. Trustee v. Knudsen Corp. (In re Knudsen)*, 84 B.R. 668 (9th Cir. BAP 1988), including provisions for the court to review fees and expenses for reasonableness pursuant to quarterly interim compensation applications. The BAP recognized that

> the problem, arising especially in large cases, [is] that when counsel must wait an extended period for payment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent.

*Id.* at 672 (footnote omitted).

The four *Knudsen* factors exist here: (1) the County's case is the largest Chapter 9 proceeding in history; (2) requiring the Committee professionals to wait until the end of the case before receiving compensation would create an undue hardship; (3) the procedures allow the court to review the payments on an interim basis; and (4) all interested parties have received notice and an opportunity to be heard on the Motion.

6. The County decided to pay 100% of the Committee professional fees because the Committee has and will continue to play a pivotal role in the reorganization process. The County decided to pay half of the Vendor Subcommittee professional fees because, while some compensation was necessary to ensure that it could function and contribute to the reorganization effort, it was not clear that all of the Vendor Subcommittee's work would ultimately meet the substantial contribution standard.

the Motion were resolved by agreement of the parties.[7] However, the Indenture Trustees maintained their position that a reasonable rather than substantial contribution standard should apply to requests for compensation for professionals retained by members of the Committee. The Employee Subcommittee argued that the court could, and should, order the County to pay any compensation award to its professionals on an interim basis.

## DISCUSSION

■ Dealing with the interim payment issue first, the County has not consented to pay the Bondholder or Employee Subcommittees on an interim basis. The County does not object to an interim allowance based on a substantial contribution standard, but it reserves the right to decide unilaterally whether payment before the end of the case is appropriate. The County contends that

any order requiring interim payments, without the County's consent, would interfere with the County's property and revenue in violation of Code § 904.

■ Code § 331, which governs the interim payments of professionals,[8] is not incorporated into Chapter 9.[9] Instead, the payment of Chapter 9 professionals is governed by Code § 943. Section 943 provides that if a plan is to be confirmed, all allowed administrative expenses, including committee/subcommittee professional fees, must be satisfied on the effective date of the plan.[10] Chapter 9 contemplates, therefore, that committee professionals will be paid at the end of the case rather than during its pendency.

■ This structure is entirely consistent with the jurisdictional limitations of Chapter 9, which reflect a sensitivity towards state constitutional rights. *See* Code §§ 903 [11] and

7. The Trustee supported the Motion, but requested clarification that the Subcommittees could seek a substantial contribution allowance even though they are "official" committees (appointed pursuant to § 1102). The County agreed that it would not object on this basis.

The Employee Subcommittee contends that, like the Committee and the Vendors Subcommittee, both the Employee Subcommittee and the Bondholder Subcommittee should be allowed to submit applications for interim compensation. The County agreed not to oppose interim applications, but reserved the right to refuse payment until the end of the case depending on its financial situation at the time.

The Committee raised a concern that the $2 million that has been budgeted for fees and expenses might be insufficient. In response, the County conceded that while this appropriation will likely be insufficient to satisfy all claims, the County will consider increasing the amount when necessary and appropriate.

8. Section 331 provides:

A Trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title....

9. Code § 901(a) makes applicable to Chapter 9 all or portions of forty-six different sections of

Chapters 3, 5, and 11 of the Code. These sections of the Code were carefully selected as being necessary or desirable to the conduct of a Chapter 9 case. 4 *Collier on Bankruptcy,* ¶ 901.03 at 901–6 (L. King 15th ed. 1994).

10. Section 943(b)(5) provides that the court shall confirm a plan if "the plan provides that on the effective date of the plan each holder of a claim of a kind specified in section 507(a)(1) of this title will receive on account of such claim cash equal to the allowed amount of such claim...." Code § 507(a)(1) refers to administrative expenses allowed, including compensation for committee/subcommittee professionals pursuant to Code § 503(b).

11. Section 903 states: "This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality...." In essence, § 903 states that Chapter 9 does not affect the power of a state to control its municipalities. The purpose of this provision is to remove any inference that Chapter 9 does anything more than provide a method for municipalities to adjust their indebtedness. 4 *Collier, supra,* ¶ 903.02 at 903–3. The legislative history of Chapter 9 indicates that § 903 was crucial to the constitutionality of Chapter 9. In fact, the Supreme Court relied, in part, on the limitations imposed by § 903 when it upheld the constitutionality of the 1937 Municipal Bankruptcy Act (the "1937 Act") in *United States v. Bekins,* 304 U.S. 27, 51, 58 S.Ct. 811, 815, 82 L.Ed. 1137 (1938). 4 *Collier, supra,* ¶ 903.02 at 903–2.

904.[12] An order by me that the County pay professionals on an interim basis would constitute interference with "the property or revenues of the debtor." *See* § 904(2). Congress apparently recognized such interference as constitutionally suspect when it excluded § 331 from Chapter 9. Based on the foregoing, I hold that Chapter 9 does not empower me to order the County to make interim payments to professionals without the County's consent.[13]

■ The second issue in dispute is whether the County is required to pay the reasonable fees and expenses of professionals retained by individual members of the Committee. The Motion provides that the Committee members, including Indenture Trustees, may only obtain an allowance of professional fees upon a showing of a "substantial contribution."[14] The Indenture Trustees argue that with the addition of Code § 503(b)(3)(F) in the Reform Act, the County is required to reimburse the expenses and professional fees of members of the Committee on a reasonable rather than a substantial contribution basis. The County responds that the Reform Act did not change prior law which limits such compensation to creditors who make a substantial contribution to the reorganization effort. Moreover, if the standard is relaxed as the Indenture Trustees suggest, uncontrollable administrative expenses will result for the County and debtors generally.

■ The interplay between § 503(b)(3)(F) and Code § 503(b)(4) caused

this controversy. Section 503(b)(3)(F) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee. . . .

Thus, under § 503(b)(3)(F), a member of a committee may be reimbursed for reasonable expenses incurred in connection with a member's performance of committee duties. Section 503(b)(4) provides reimbursement for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection. . . ." Under this section, any *entity* that is eligible to have its expenses allowed under § 503(b)(3) may also recover its reasonable professional fees that are incurred in providing a § 503(b)(3) service.

■ The Indenture Trustees argue that a plain reading of § 503(b)(3)(F) and § 503(b)(4) entitles them to reimbursement of their attorney fees as members of the Committee. Although the Indenture Trustees' contention may seem correct on a first reading of § 503(b)(4), it does not withstand

---

12. Section 904 states:

Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the debtor's use or enjoyment of any income-producing property.

The purpose of this provision was to circumvent any possible Tenth Amendment objection to municipal bankruptcy legislation. 4 *Collier, supra*, ¶ 904.01 at 904–01. The limitations imposed by § 904 were important to the *Bekins* Court, and it is unlikely that any municipal bankruptcy legislation would have been passed without them. *Id.* at 904–2.

13. This creates a situation where I might award interim compensation without requiring the County to pay before the effective date of the plan. Section 943 provides that in order for a plan to be confirmed, all administrative expenses must be satisfied before the effective date. This requirement does not violate § 904(2) because in order for the County to obtain the benefits of a Chapter 9 adjustment of debts, it must pay its administrative claims. The price for these benefits is the County's implied consent to this court's power to apply all the provisions of § 943. If the County does not wish to pay this price, it can dismiss the case at any time. *See In re Castle Pines North Metropolitan District,* 129 B.R. 233, 235 (Bkrtcy.D.Colo.1991).

14. The Committee and the Employee Subcommittee support the Indenture Trustees' position.

closer scrutiny. The rules of statutory interpretation dictate that the court must first look to the language of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("where ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917))). In *Toibb v. Radloff*, 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991), the Supreme Court held that "[w]here, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." Moreover, where the language of a statute is not ambiguous, legislative history need not be considered. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2297 n. 29, 57 L.Ed.2d 117 (1978).

The question then is whether the statute is clear. I believe that § 503(b)(4) is ambiguous when applied to § 503(b)(3)(F). Section 503(b)(4) allows compensation for services rendered by a professional of an *entity* whose expense is allowable under § 503(b)(3). It is uncertain, however, whether § 503(b)(4) applies to § 503(b)(3)(F) because it is not clear that a *member of a committee* constitutes an *entity*. Code § 101(15) defines entity to include "person, estate, trust, governmental unit, and United States trustee...." This definition does not specifically include "a member of a committee." This is not necessarily determinative because it is clear from the Code that a creditor is considered to be an entity even though the term "creditor" is not included in the definition of entity.[15] That notwithstanding, Congress, historically, has been quite specific when it comes to authorizing payments from the estate to professionals.[16] Surely, Congress would not make such a dramatic change in the law without following historical precedent by clearly specifying those entities who can seek reimbursement from the estate.

■ Additionally, although the specific examples of entities in § 101(15) are not exclusive, the term should be narrowly applied in the context of § 503(b)(4). *See In re Hanson Industries, Inc.*, 90 B.R. 405, 409 (Bkrtcy.D.Minn.1988) ("It is well settled that these statutory provisions [§ 503] must be narrowly construed, in order to keep fees and administrative expenses at a minimum so as to preserve the estate for the benefit of all creditors."); *see also In re OPM Leasing Services, Inc.*, 23 B.R. 104, 121 (Bkrtcy. S.D.N.Y.1982). Accordingly, the term "entity" in § 503(b)(4) should not be interpreted broadly when it comes to compensation matters.

Because the statutory language is unclear, the legislative history of § 503(b)(3)(F) must be examined. The House Report accompanying the Reform Act clearly indicates that § 503(b)(3)(F) was enacted to permit committee members to receive court-approved reimbursement of their actual and necessary out-of-pocket expenses.[17] It does not allow the payment of compensation for services rendered by or to committee members. The earlier Senate Bill (No. 540) did specifically call for the payment of the professional fees of members of a committee, but that provision did not survive the legislative process.[18]

---

**15.** Code § 101(10)(A) defines creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...."

**16.** For example Code § 328(a) provides: "The Trustee or a committee appointed under section 1102 ... may employ or authorize the employment of a professional person under section 327 or 1103 of this title ... on any reasonable terms and conditions of employment...." Code § 330(a)(1)(A) provides "reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person...." *See also* Code §§ 331 and 503.

**17.** The House Report states that because the pre–1994 Bankruptcy Code was silent regarding whether committee members were entitled to reimbursement for their out-of-pocket expenses, the courts were split on the issue. Section 503(b)(3)(F) was enacted to remedy this problem.

**18.** Senate Bill No. 540 indicates that the Senate considered adding § 503(b)(7) to the Code. S.Rep. No. 168, 103rd Cong., 1st Sess. (1993). This section would have allowed:

Unfortunately, the legislative history does not explain why the Senate provision was dropped. Congress could have decided that the payment of professional fees for members of committees was inappropriate when balanced against the interests of the bankruptcy estate. On the other hand, Congress could have viewed a separate fee provision as unnecessary given the addition of § 503(b)(3)(F) and the application of § 503(b)(4), which authorizes compensation of attorney and accountant fees to the entities receiving expense reimbursements under § 503(b)(3). The legislative history of § 503(b)(3)(F), therefore, is unclear as to whether Congress intended to provide committee members with reimbursement for reasonable professional fees along with the entities specified in § 503(b)(3).

■ Because neither the plain language of the statute nor its legislative history answers the question, the next step is to examine the bankruptcy practice that existed prior to the addition of § 503(b)(3)(F). The Supreme Court has indicated that it "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (citations omitted). Accordingly, without a clear directive from Congress to the contrary, this court should follow prior bankruptcy law.

■ The American rule governs the award of attorney fees and provides that each party in a civil litigation bears its own professional fees. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The American rule ordinarily applies to bankruptcy proceedings. *See, e.g., Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 819 (9th Cir.1994). Exceptions to the American rule are narrowly construed and generally authorized by statute. *Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763, 765 (9th Cir.1984) ("The American Rule denies attorney's fees to a litigant in federal court in the absence of contract, applicable statute, or other exceptional circumstances.... [A]ny exceptions to the American Rule will be narrowly circumscribed.") (citations omitted); *See also In Matter of W.T. Grant Company*, 85 B.R. 250, 265 (Bkrtcy.S.D.N.Y.1988) ("It cannot be over emphasized that in the instant case there is no statutory authority for fees to bring the controversy within that narrow exception to the American Rule.").

■ Following the American rule, the Code provides that members of committees are not entitled to compensation for professional fees unless their services result in a substantial contribution to the Chapter 9 or 11 case.[19] Through the addition of § 503(b)(3)(F), the Indenture Trustees argue that Congress changed the prior law. Without a clear indication that Congress intended this result, I cannot agree.

■ My view is consistent with the overall structure of the Code. Pursuant to § 1102(a)(1), the Trustee may appoint a committee of creditors. If an indenture trustee becomes a member of the committee, the trustee accepts with the understanding that it has a fiduciary duty of undivided loyalty

[T]he actual, necessary expenses incurred by a member of a committee appointed under section 1102 in the performance of duties of the committee (including fees of an attorney or accountant for professional services rendered for the member to the extent allowable under paragraph (4)) other than claims for compensation for services rendered as a member of the committee.

However, the House Bill was passed in lieu of the Senate Bill and § 503(b)(7) was omitted without explanation. H.R.Rep. No. 834, 103rd Cong., 2d Sess. 8 (1994).

**19.** To obtain reasonable compensation for professional services of an attorney or accountant to

a committee member, the member would have to be a creditor, an indenture trustee or an equity security holder and make a substantial contribution to the case. *See* §§ 503(b)(3)(D) and 503(b)(4). *See In re General Homes Corp.*, 143 B.R. 99, 103 (Bankr.S.D.Tex.1992). A substantial contribution has been defined as services that have "substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders." *In re United States Lines, Inc.*, 103 B.R. 427, 429 (Bkrtcy.S.D.N.Y.1989). This standard is extremely difficult to meet. *Id.* at 430.

and impartial service to all creditors. *Woods v. City National Bank,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). In other words, while working on the committee, the indenture trustee must act for the best interests of all creditors.

To aid the committee in fulfilling its responsibilities, the committee may appoint professionals to advise the committee and its members on their duties and responsibilities. *See* Code § 1103(a).[20] Legal tasks that are required to be performed by the committee should be handled by committee counsel. Sometimes, counsel to an individual committee member may have an expertise that is needed by the entire committee. If that is the case, the committee can retain the attorney as special counsel. The formal appointment puts everyone on notice that the attorney is performing services for the committee and will be paid for those services like any other professional retained by the committee.[21]

An indenture trustee who serves on a committee also continues to represent the interests of its constituency. The Indenture Trustees argue that because they are also fiduciaries to their constituencies, the bankruptcy necessitates the appointment of separate counsel to advise them on their duties and responsibilities to those constituencies. They want the County to pay the reasonable costs for this representation. The County appropriately responds that it has no obligation to pay for attorney services to the Indenture Trustees unless the services result in a substantial contribution to the Chapter 9. *See United States Lines,* 103 B.R. at 430 ("legal services which are provided solely in order to benefit the client-as-creditor are not compensable, even where they confer an incidental benefit upon the estate") (citations omitted). On the other hand, compensation may be appropriate if the Indenture Trustees can establish that the services conferred "a significant and demonstrable benefit upon

the reorganization process which ha[s] not been rendered solely on behalf of a creditor's own interest...." *Id.* (citations omitted).

Lastly, the Indenture Trustees claim that the issues regarding reimbursement of professional fees to members of the Committee may not be ripe for adjudication because the Indenture Trustees are only seeking a reservation of rights under § 503(b)(3)(F) rather than actual compensation. This argument is incorrect for two reasons. First, the issue was ripe because it needed to be resolved before the Motion could be approved. Second, the Indenture Trustees have specifically waived any procedural objections regarding ripeness.

## CONCLUSION

In summary, this court does not have the power to order the County to make interim compensation payments. The recent addition of § 503(b)(3)(F) entitles Committee members to their out-of-pocket expenses, but it does not create a right through § 503(b)(4) for Committee members to require the County to reimburse them for their professional fees unless the services result in a substantial contribution to the Chapter 9.

This memorandum opinion shall constitute my findings of fact and conclusions of law in support of Order Granting Motion of County of Orange For Order Approving Comprehensive Fiscal Year 1994–95 Compensation Package For Professionals Retained By Official Committee of Creditors of the County of Orange.

**20.** Section 1103(a) states in relevant part: "At a scheduled meeting of a committee appointed under section 1102 ... and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys ... to represent or perform services for such committee."

**21.** Professionals representing committees formed under § 1102 are normally compensated under § 330, which authorizes the court to award reasonable compensation for actual, necessary services rendered to the committee.